## DAVIS *vs.* HUBBARD.

[BILL IN EQUITY FOR INJUNCTION OF ACTION AT LAW, CANCELLATION OF BILL OF SALE, AND ACCOUNT.]

1. *Absolute bill of sale and defeasance together construed as mortgage.*—A bill of sale for a slave, which is absolute on its face, and which recites the payment of a consideration much less than the real value of the slave; and a defeasance executed by the purchaser on the same day, by which he agrees to reconvey the slave at the end of the year, provided she should then be alive, and provided the vendor should pay him the amount of a debt then existing, and any other debt which he might contract during the year,—construed together, constitute a mortgage.

2. *When mortgagor may come into equity.*—The mortgagor of a slave, who is in possession, and who alleges that the debt has been paid, may nevertheless come into equity to enjoin an action at law for the slave, when it appears that there has been no acceptance of the payment as a satisfaction, and no release of the title by the mortgagee.

APPEAL from the Chancery Court at Wetumpka.
Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed by Nancy Davis, against John B. Hubbard, for the purpose of enjoining an action at law, instituted by said Hubbard against the complainant, for the recovery of a slave; and it also asked the cancella-

tion of a bill of sale for the slave, which the complainant had executed to Hubbard, an account, and general relief. The bill alleged, that the bill of sale, though absolute on its face, was intended only as a mortgage, to secure the payment of a small debt which the complainant then owed to the defendant, and of any future debt which she might contract with him during the year, and was accompanied with a defeasance written on a separate piece of paper; that no money whatever was paid; and that the debts intended to be secured have been paid. The bill of sale was in the usual form, and dated the 13th December, 1854; recited the payment of two hundred and fifty dollars as the consideration, and contained a warranty of title and soundness. The defeasance, which was also dated the 13th December, 1854, was in the following words:

"I hereby acknowledge, that I have this day received from Mrs. Nancy Davis a bill of sale of a certain negro girl named Anna Sylvia, about four years of age, of yellow complexion; which girl I hereby oblige myself to reconvey to the said Nancy Davis at the end of one year from this date, provided the said girl should then be living, and provided also that the said Nancy Davis shall well and truly pay, or cause to be paid to me, all that she now owes to me, and all that may be due to me from her, arising from any future contracts or business, between now and the expiration of the one year above mentioned. Given under my hand," &c.

The defendant filed an answer, in which he denied that the transaction was intended or understood as a mortgage; alleged, on the contrary, that it was an absolute sale, and that he paid the full value for the slave, by paying a debt which the complainant then owed to Melton, Brassell & Co., and by receipting in full the account which he then held against her; admitted the execution of the defeasance on the same day, but denied that the complainant had complied with the conditions therein prescribed; and demurred to the bill, for want of equity, and because the complainant had an adequate remedy at law. The chancellor sus-

tained the demurrer, and dismissed the bill; and his decree is now assigned as error.

L. E. PARSONS, and JOHN WHITE, for the appellant.

J. Q. LOOMIS, and W. L. YANCEY, *contra.*

A. J. WALKER, C. J.—The bill of sale by the complainant to the defendant, and the defeasance executed by the defendant on the same day, must be construed as one instrument. Together they make a mortgage. Every element of a mortgage is present in the transaction. It provides a security for present and prospective indebtedness; the life of the mortgaged slave remains at the risk of the debtor, and the bill shows that the property greatly exceeded the debts secured.—*Crews v. Threadgill,* 35 Ala. 334; *Pearson v. Seay,* 35 Ala. 612, and authorities therein cited.

[2.] The chancellor, while holding the instrument to be a mortgage, denied the equity of the bill, upon the ground that he was constrained by the decisions of this court to decide, that the mortgagor of a chattel in possession, who has paid the mortgage debt after default made, may defend at law, and has no right to come into chancery.

It must be admitted, that the decisions of this court give plausibility to the position of the chancellor. In one case it is held, that a mortgagor, who offered to discharge the debt within the time to which the period of redemption was by verbal agreement extended, might maintain detinue against the mortgagee.—*Deshazo v. Lewis,* 5 St. & Por. 91. So, it has been held, that the discharge or release of a mortgage, by a subsequent parol agreement, is available at law.—*Acker v. Bender,* 33 Ala. 230; *Wallis v. Long,* 16 Ala. 738. In the case of *Harrison v. Hicks,* (1 Por. 423,) a mortgagor brought a suit for the conversion of the mortgaged chattel; and the court charged the jury, that if a certain power of attorney, giving to the assignee of the mortgage authority to draw a sum of money belonging to the mortgagor, was accepted by such assignee "as a release

of his title" to the mortgagor, the title would be revested in the mortgagor. This court, in affirming the correctness of that charge, said : "In the case of a mortgaged chattel, where the debt has been paid, the legal title is perfect in the mortgagor. If this principle be correct, a resort to chancery would not be tolerated, even if the mortgagee were in possession of the property. But when the debt has been paid, and the chattel in possession, there can be no doubt of a perfect legal title, the bill of sale notwithstanding."

While the question of this case is covered by the language used in the decision from which the above quotation is made, it must be observed, that the question was different. There the question was as to the effect of a satisfaction, accepted as a release of the mortgage ; while here the question is as to the effect upon the jurisdiction of a chancery court of a payment not received' or recognized as a discharge of the mortgage, or of the mortgage debt. Whether this difference makes a distinction in principle, we shall not inquire, At all events, it is clear that the court was only called upon to decide as to the remedy at law, and not to pass upon the question of a concurrence of remedy in chancery.

In *Brown v. Lipscomb*, (9 Porter, 472,) it was decided, that the legal title of a mortgagee to a slave becomes absolute by a forfeiture of the condition, and is not divested by a subsequent payment. In *Sims v. Canfield*, (2 Ala. 555,) the court, considering the remedy of a mortgagor, who had after default tendered the money due, said : "But, if it was admitted, that the mortgagor may, under such circumstances, have his action of trover or detinue against the mortgagee, it will not follow that chancery is ousted of the jurisdiction of a bill to redeem the mortgaged chattel. Even a pledgor may go into equity, whenever it becomes necessary to have an account. Whenever slaves are the subject of a mortgage, it most frequently happens that it is necessary to take an account, as the mortgagee is in possession, and consequently in receipt of their profits.

Davis v. Hubbard.

This is here shown to be the case by the allegations of the
bill; and therefore we consider that in this case the court
of chancery had jurisdiction".

It is certain that courts of chancery originally had juris-
diction to decree the redemption of mortgaged chattels, as
well as real estate. Indeed, the right to redeem after de-
fault made is a doctrine which originated with the chancery
court, and is recognized as an equitable doctrine in the
text-books.—2 Story's Equity, §§ 1014, 1015, 1030. As
the redemption of mortgaged chattels originally belonged
to the jurisdiction of the chancery court, it is not divested
of that jurisdiction, even though it may now be exercised
by courts of law. Guided by principle, we are bound to
decide that, in such a case as this, where there has been
no acceptance of the payment as a satisfaction, and no re-
lease of the title to the mortgagor, there is a jurisdic-
tion in the chancery court. Upon the facts of this case,
there is no consent on the part of the mortgagee to the
return of the title to the mortgagor; and we think that,
on the score of expediency, she ought not to be compelled
to rely upon a mere implication of title from the payment.

If it be conceded that there was a concurrence of rem-
edy, then the court which first obtained jurisdiction would
retain it in exclusion of the other. That principle, how-
ever, would have no application here. If it be admitted
that the complainant might have defended the action at
law, brought by the defendant for the recovery of the
slave; yet the bringing of that suit did not put in exer-
cise the jurisdiction of the court over the defensive mat-
ter. If the complainant had permitted the suit at law to
proceed to a judgment, without interposing her defense,
and thus suffered her right to defend to become *res adjudi-
cata*, the question would have been different.—*Pearce v.
Winter Iron Works*, 32 Ala. 68; *Foster v. State Bank*,
17 Ala. 672. If the chancellor should be of the opinion
that the bill was unnecessarily filed, he might, perhaps, in
the exercise of his discretion, refuse a preliminary injunc-
tion, and refuse costs; but he could not refuse to exercise

his jurisdiction to grant the appropriate relief.—*Sailly v. Elmore*, 2 Paige, 499.

Reversed and remanded.