(81 South, 811)
ZIMMERN v. PEOPLE'S BANK OF MOBILE et al. (1 Div. 69.)

(Supreme Court of Alabama. May 1, 1919.)

1. MORTGAGES ⬌137—FORECLOSURE—MORTGAGOR'S JUDGMENT DEBTOR'S LIEN—EQUITY OF REDEMPTION.

The law day of the mortgage having passed, the sole subject of judgment creditor's lien obtained subsequent to the mortgage was the judgment debtor's equity of redemption.

2. CHATTEL MORTGAGES ⬌129—MORTGAGES ⬌137—FORECLOSURE—PROPERTY INTEREST OF MORTGAGOR—EQUITY OF REDEMPTION.

The equity of redemption remaining in the mortgagor of land or of chattels is a property interest.

3. MORTGAGES ⬌137—FORECLOSURE—"EQUITY OF REDEMPTION"—RESIDUARY INTEREST.

The essence of the "equity of redemption" is the right to redeem by paying the mortgage debt, and as a "residuum of interest" it is measured by the balance remaining after the mortgage debt is satisfied; but, while the equity of redemption is an incident to all mortgages, it is independent of the terms of the mortgage and is not an element of the interest or

estate subject to liability by the mortgage terms.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Equity of Redemption.]

4. JUDGMENT ☞780(4) — FORECLOSURE—REDEMPTION — LIEN OF MORTGAGOR'S JUDGMENT CREDITOR.

The lien of a judgment creditor upon judgment debtor's equity of redemption under a mortgage given prior to such judgment, which was registered in the probate office, Code 1907, §§ 4156, 4157, was but a charge on, and not a right in, or to, the equity of redemption.

5. TRUSTS ☞91—"TRUST IN INVITUM"—ESSENTIALS.

The fundamental basis for the application of the doctrine of "trust in invitum" is that complainant's property is either in the possession of one in whose custody it would be unconscionable to permit it to remain, or that such property has been wrongfully misapplied or converted to the use of him whose duty with respect thereto was violated; but in either case such property must have been the subject-matter of the transaction or contract upon which the complaining party invoked the trust implication.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Trust in Invitum.]

6. TRUSTS ☞107—IMPLIED TRUST—MORTGAGOR'S EQUITY OF REDEMPTION—BURDEN OF PROVING VALUE.

The burden rested on complainant, mortgagor's judgment creditor, to bring forward evidence to sustain the essential condition that the equity of redemption was of value in order to invoke the implication of an ·implied trust in such equity.

Appeal from Circuit Court in Equity, Mobile County; Norville R. Leigh, Jr., Judge.

Bill by Samuel Zimmern against the People's Bank of Mobile and others. From a judgment denying relief on the amended original bill and awarding relief to the cross-complainants, complainant appeals. Affirmed.

Harry T. Smith & Caffey, of Mobile, for appellant.

Stevens, McCorvey & McLeod, of Mobile, for appellees.

McCLELLAN, J. The original bill, filed December 8, 1917, by appellant against appellees, sought the establishment and enforcement of an alleged lien, resulting from a recorded judgment. Subsequently, the bill was amended, to assert that different character, if not right, of relief to be later stated. The circumstances out of which the contest arises will be recited with due regard to their chronological order.

On January 3, 1914, the Southern Dredging Company was indebted to the McPhillips

Grocery Company and to the American Supply Company in the respective sums of $4,126.23, and $3,613.20, to secure which the debtor executed a trust deed to James McPhillips, trustee, describing, with other property, the dredge Herndon and two scows, numbered 1 and 2. The debts so secured were to be paid in periodically maturing installments, the last in 12 months after date. This instrument was duly recorded in Mobile county on January 8, 1914. During the year 1914, the notes, thus secured, to the American Supply Company, were transferred to the People's Bank. Four of the notes secured by the trust deed—those maturing in 9 and 11 months, respectively—are unpaid. On October 25, 1916, the dredge was sold by an admiralty court at New Orleans to satisfy charges other than any here involved; and was bought, indirectly, by the People's Bank at the price of $5,000. The effect of this sale was to vest in the People's·Bank (for all present purposes) the unincumbered title to the dredge. On April 5, 1917, the appellant (complainant) was accorded a judgment in the sum of $2,818.26 and $6.35 costs, against the Southern Dredging Company, the corporation that had, in 1914, executed the deed of trust before mentioned. This judgment was registered in the probate office of Mobile county on April 19, 1917, thereby subjecting the property of the judgment debtor in Mobile county to the lien of the statute. Code, §§ 4156, 4157. In view of the previous (in 1914) subjection of these two scows to the trust deed—the law day of which had passed—the subject of this judgment creditor's lien was, so far as these scows were concerned, the judgment debtor's equity of redemption therein. On May 31, 1917, the People's Bank made an agreement of sale of the dredge and the two scows in question to Ollinger and Perry, for $18,000, reserving the title until the purchase price, through deferred payments, was paid and warranting that the property was "free from all liens and claims of every kind and character."

. Ollinger and Perry expended, up to December, 1917, $3,461.84 in floating and repairing these scows. No foreclosure of the trust deed, under the powers to that end, appears to have been even undertaken until after the appellant's bill in this cause was filed.

Within the limit of the matters on which the submission of the cause was had, it is impossible to affirm, as upon the evidence in what right the People's Bank took possession of or assumed control over the scows at or before the date of the agreement to sell to Ollinger and Perry.

It appears with fair certainty that the balance due on the debts secured by the deed of trust to McPhillips, trustee, is upwards of $5,000. The theory of the bill, after the

amendment to be presently stated, did not seek remuneration of the complainant because of the destruction of complainant's lien upon the equity of redemption.

There is no evidence of the value of the scows at the time of the agreement of sale by the People's Bank to Ollinger and Perry, or at any other time, though the record does disclose that Ollinger and Perry have, since the agreement, expended upon these scows the sum previously stated.

Through amendment effected in April, 1918, the prayer of the bill was made to read as follows:

"And your orator does further pray that upon the hearing of this cause this honorable court will decree in favor of your orator's said judgment lien upon the said dredge 'Thos. H. Herndon' and upon the said scows, and that the People's Bank and the said James McPhillips may be held to be responsible to your orator for the proceeds realized from the sale of said dredge, and also from the sale of said scows, and that they may be held to have received said proceeds as trustees for the benefit of your orator to the extent of his said lien, and that a decree may be granted against them in favor of your orator to said extent, and that your orator may have such other and further relief as he may be entitled to receive the premises considered, as in duty bound he will ever pray."

This amendment was regarded as evincing the complainant's purpose, "election" to affirm the assertedly wrongful sale of the dredge and scows, and to invoke relief upon the theory that the People's Bank became a trustee in invitum of the proceeds of their sale for the benefit of the complainant "to the extent of his lien," as a judgment creditor who had registered his judgment.

The defendants answered the bill and constituted their answer a cross-bill, wherein a foreclosure of the trust deed or mortgage was prayed.

The court denied relief on the amended original bill, and awarded relief to the cross-complainants consistent with the prayer of their cross-bill.

[1, 2] The principles to which the amended prayer refers the bill may be found stated in 3 Story's Equity Jurisprudence (14th Ed.) §§ 1663–1666, and which have been illustrated in readily accessible decisions of this court, among which may be noted Dickinson v. Bank, 98 Ala. 546, 14 South. 550, and Bellinger v. Lehman, 103 Ala. 385, 15 South. 600. The doctrine of Story's text is that the law will imply a trust, and a trustee in invitum, "where a party has received money which he cannot conscientiously withhold from another party"; the text proceeding with the approval of the expression in some of the cases "that the receiving of money which consistently with conscience cannot be retained is in equity sufficient to raise a trust in favor of

the party for whom or on whose account it was received"; and concluding that the true question, in such cases, is "not whether money has been received by a party of which he could not have compelled the payment, but whether he can now, with a safe conscience ex æquo et bono retain it." The text in Story, § 1666, describes the effect of the application of the same principle in this form:

" * * * Wherever the property of a party has been wrongfully misapplied, or a trust fund has been wrongfully converted into another species of property, if its identity can be traced, it will be held in its new form liable to the rights of the original owner or cestui que trust."

This last expression of doctrine has had a measure of repetition in Smith v. Perry, 56 Ala. 266, 268; Small v. Hockinsmith, 158 Ala. 234, 48 South. 541.

The application of the principle to the status of right and relation present in the cause depends upon the character and identity of the particular subject-matter of the lien the complainant secured by the registration of his judgment. The law day of the mortgage having passed, the sole subject of complainant's lien was the judgment debtor's equity of redemption. It has been held that an equity of redemption remaining in the mortgagor of land is a property interest. Welsh v. Phillips, 54 Ala. 309, 315, 25 Am. Rep. 679; Rainey v. McQueen, 121 Ala. 191, 195, 25 South. 920; Lewis v. McBride, 176 Ala. 134, 137, 57 South. 705—among others. The like equity of redemption exists with respect to mortgaged chattels. Davis v. Hubbard, 38 Ala. 185, 189. In further definition of the nature and measure of the equity of redemption, it was said in McGough v. Sweetser, 97 Ala. 361, 364, 12 South. 162, 163 (19 L. R. A. 470), Stone, C. J., writing:

"A mortgage in equity and in fact is only a security for the payment of a debt. It does not convey all the interest of the mortgagor. So soon as the debt is paid, the entire ownership revests in him. So, likewise, if the property conveyed in the mortgage is more than sufficient to pay the debt, that balance when ascertained belongs to the mortgagor. This privilege and residuum of interest constitutes what is known as the mortgagor's equity of redemption. * * *"

In Beard v. Smith, 71 Ala. 568, where the question was whether a surplus of proceeds after foreclosure of a mortgage on land continued to have the character of realty rather than personalty, this was approvingly quoted with respect to the quantum of the subject-matter of the equity of redemption:

"The proceeds of the sale, after satisfying the mortgage debt, may be said, in general, to stand in the place of the equity of redemption to those who had title or right in that. * * *"

[3, 4] In the very nature of things, the equity of redemption is subordinate to and

distinct from the predominating, precedent right and interest of the mortgagee to have the debt discharged out of the mortgaged property. The essence of the equity of redemption is the right to redeem by paying the mortgage debt; and as a "residuum of interest" it is measured by the "balance" remaining after the mortgage debt is satisfied. The equity of redemption, while an incident to all mortgages, is independent of the terms of the mortgage, is not an element of the interest or estate subject to liability by the terms of the mortgage. 11 Am. & Eng. Encyc. of Law, p. 206 et seq. Upon this peculiar interest—the equity of redemption—the complainant's lien was but a charge, not a right in or to the equity of redemption, the title or ownership which remained in the judgment debtor. The subject of complainant's lien, in respect of its quantum, could not have been any greater than was its measure while remaining in the mortgagor. Neither the judgment nor the lien consequent upon it effected to enlarge or extend the measure of the judgment debtor's equity of redemption under the deed of trust. This is demonstrable by 'the consideration that had an execution been levied upon the judgment debtor's equity of redemption, as might have been done, the purchaser at the sale under execution would have acquired only the equity of redemption as it existed in the judgment debtor. As a right to be exercised, the whole function of the equity of redemption was to empower the owner of the equity of redemption to redeem from the mortgage debt; and, as a property interest in the owner thereof, its value was contingent upon the balance that might remain after the mortgage debt had been paid. This complainant has not become the "owner" of the judgment debtor's equity of redemption; he had but a lien upon it—a lien that did not extend to the "property" covered by the mortgage.

[5, 6] With particular reference to the doctrine reiterated from Story, what was the effect (if any) upon complainant's rights of the agreement of the People's Bank to sell the scows to Ollinger and Perry and delivery of their possession to these conditional vendees? The fundamental basis for the application of that doctrine is that property of the complaining party is, either in the possession of one in whose custody it would be unconscionable to permit it to remain, or that property of the complaining party has been wrongfully misapplied or converted to the use of him whose duty with respect thereto was violated. In both instances the "property" of him who would have an implied trust raised to protect and reimburse him must have been the subject-matter of the transaction or contract upon which the complaining party invoked the implication of a trust to his benefit. Whether this mortgagor's equity of redemption had any support, was of any value, depended upon the inquiry whether the property remaining subject to the deed of trust was of a value greater than the remainder of the debts secured by the deed of trust, thus, if so affording a "balance" by which the equity of redemption remaining in the judgment debtor was measurable. Until the affirmative of this essential condition to a subject-matter upon which the complainant's lien on the equity of redemption could rest was shown, it cannot be affirmed that any property or interest upon which this complainant's lien rested is a part of the proceeds resulting from the sale of the two scows to Ollinger and Perry. Necessarily, the burden of proof was upon the original complainant to bring forward evidence to sustain this essential condition to any right in him to invoke the implication of a trust in his behalf. Smith v. Mottley, 150 Fed. 266, 268, 80 C. C. A. 154. It is hardly necessary to add that in this view of the cause the rule with respect to the burden of proof where there has been a "confusion" of goods, of proceeds, or of trust funds (Lehman v. Kelly, 68 Ala. 192), has no application, for the reason that in the circumstances of the case at bar there is an absence of proof tending even to show that property "belonging" to the complainant or the judgment debtor, or the proceeds thereof, has been commingled with the property or funds or otherwise of the People's Bank or of the other beneficiaries of the deed of trust to McPhillips.

A number of decisions are cited on brief for appellant that illustrate the jurisdiction of equity to make effective liens on "property," at the suit of the lienor. Westmoreland v. Foster, 60 Ala. 448, and others in that line, were cases where the lien was on property itself, and the courts were effectuating the lien against misapplication or conversion of the very subject of the lien, pursuing the proceeds of the wrongful act to the satisfaction of the lien. Bellinger v. Lehman, 103 Ala. 385, 15 South. 600, illustrates the like principle at the suit of mortgagees (appellees) whose lien on M. T. Ray's interest in partnership crops was enforced, after appropriate election, against the proceeds of the sale by M. T. Ray's administrator of Ray's interest in the partnership crops. In none of the decisions relied on was there involved an effort by the lienor to assert a property interest that was contingent, as was this equity of redemption.

It results from these considerations that complainant's bill was properly dismissed. The decree is therefore affirmed as for any error assigned by appellant.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.