150 So.2d 209

**Curtis PUTNAM, Sr.**

**v.**

**Viva J. PUTNAM.**

**7 Div. 537.**

Supreme Court of Alabama.

Feb. 7, 1963.

Hawkins & Rhea, Gadsden, for appellant.

Hinton & Torbert, Gadsden, for appellee.

## PER CURIAM.

In an original bill of complaint filed in the equity division of the circuit court of Etowah County, against appellee (respondent below), appellant alleged that he gave to appellee monies to purchase a home for himself, and that instead, "defendant took the monies of plaintiff caused the house and lot to be purchased in her own name without the knowledge of plaintiff." He further alleged that "subsequently and after the divorce," the defendant "caused the house to be sold to Carl J. Bush."

By amendment to the original bill, complainant made Carl J. Bush and Joyce Bush parties respondent, alleging that they purchased the property, described in the bill of complaint, from respondent Putnam.

In addition to a general prayer for relief, complainant prayed in his original bill that the monies derived by appellee Viva J. Putnam from the sale of the property to Mr. Bush be impressed with and held in trust and paid over to him as his property; that the property described in the complaint be impressed with a trust and the proceeds from the sale "shall be held constructively by the persons receiving the same including the defendant, in trust for the use of the plaintiff." He also prayed for an accounting for all monies received from the sale.

Complainant prayed in his amendment to the complaint that the balance of the purchase price be held in trust until the further orders of the court, to the end that the rights of the complainant thereto may be protected.

The respondent Viva J. Putnam filed a demurrer to the original bill of complaint, but subsequently, in writing, waived the same.

The cause was tried on the complaint, as amended, and the answer of respondent Putnam denying the allegations of the several paragraphs of the original bill, except she admitted selling the property to Carl J. Bush and receiving monthly payments therefor. The respondents Bush neither admitted nor denied the several allegations of the complaint, admitting, however, that respondent Putnam receives monthly mortgage payments from them.

The cause was tried ore tenus before the trial judge, who, on final submission, entered a decree for respondents; ordered all impounded mortgage payments held by the Register be paid to respondent Putnam, and taxed complainant with all the court costs.

Complainant now brings the decree of the trial court here for review upon assignments of error that particularize that portion of the decree which releases or frees the mortgage debt and payments from a trust for the benefit of plaintiff and ordering the Register to release to respondent Putnam all the mortgage debt or monies paid to this officer. Also, an assignment complains that the court erred in taxing complainant with the court costs.

Complainant's testimony tended to show that he and his wife were married several years prior to their divorce in 1954; that while he was in the military service he made an allotment to his wife and that they

had a joint bank account in which they deposited his earnings while in the army and in civilian employment; that his wife did not work and that the joint bank account with his wife was the product of his earnings without contribution thereto by his wife.

He further testified that in 1945, the year he went back into military service after his discharge therefrom in 1938, he discussed with his wife the purchase of some real estate in Etowah County, and that they examined some real estate with a view to purchasing it. He testified that they looked at the property which is the subject matter of this suit; that he had to report back to the army on Sunday, and he told her to go ahead and buy the house and lot described in the complaint; that $750.00, which he had saved while working as a civilian, was used as a down payment and in paying closing costs. He further testified that he instructed his wife to put the property to be purchased in her name and his name jointly.

We quote from the testimony of the respondent, Mrs. Viva Putnam, as follows:

"Q. What money did you use to purchase it [the subject matter of this suit]?

"A. Well, it was money that we had saved.

"Q. From his earnings?

"A. Yes, sir.

"Q. You have never worked, have you, Mrs. Putnam?

"A. Well, no, I never worked, except we had a garden, and I raised chickens and things, and some of that was money that I saved.

"Q. You have never had any formal employment?

"A. No, sir.

"Q. And all of the money that was used to purchase that property was money that he earned?

"A. It come out of our government allotment.

"Q. Money that he earned at his occupation, and when he was drafted, it came from an allotment, didn't it?

"A. Yes, sir.

* * * * * *

"Q. All right, was it your understanding at the time that you were buying that property jointly, that is for the two of you?

"A. Yes, and for the children.

"Q. For the children and for the two of you, is that correct?

"A. Well—yes.

"Q. That was the understanding. And I believe you said that some six weeks later you and he discussed it?

"A. Yes, and I told him how it was made out, because I was sick at the time, and I didn't want to have to go through with all of that stuff about the deed, and Mr. Hecht said when I bought it we could have the deeds changed and I told him that, and he never did until—now that is the best I remember it, because I don't remember but very little about it, because I was real sick at the time, and I knew I was going to have to go to the hospital.

* * * * * *

"Q. But did you advise them that you and your husband were purchasing the property?

"A. I didn't know about it until we put the mortgage on it and got the deeds.

"Q. But Mr. Hecht is the man that told you it could be changed later?

"A. That's the way it must have been.

"Q. But did you tell Mr. Hecht and Mr. Ray that you and your husband were buying the property together?

"A. They knew that.

"Q. When did you advise them that you wanted your name to be the only one on that deed, when did you advise them or tell them that?

"A. They already knew I was buying it in my name because he wasn't here.

"Q. You were not trying to defraud him by not having his name put on the deeds?

"A. I was not trying to deceive him, no.

"Q. It was understood that the property would be jointly owned by the two of you, wasn't it?

"A. Yes.

\*   \*   \*   \*   \*   \*

"Q. Mrs. Putnam, up until 1954, at the conclusion of the divorce proceedings you treated and considered the property as owned by you and Mr. Putnam, and after that you considered that it was only yours?

"A. That's right."

■ We think it may be fairly and reasonably inferred from Mrs. Putnam's testimony that the husband's earnings were used to purchase the property, the deed to which was taken in the name of Mrs. Putnam; that it was agreed and understood between them that the deed was to be made to both as grantees, which was not done; that Mr. Hecht, who was assisting in closing the transaction, told respondent that the deed could be changed at a later date so as to include both of their names; that she treated the property as belonging to both of them until the divorce was granted, at which time she changed her mind and considered the property as hers, free of any right thereto on the part of complainant. It appears from the evidence that no alimony was awarded to Mrs. Putnam when the divorce was granted in Kentucky.

While we accord Mrs. Putnam a generous amount of sympathy in her efforts to salvage some material aid from her marriage to the complainant, w cannot permit this sympathy to override the mandates of the law, applicable here, and ignore the rights of Mr. Putnam to one-half interest in the property to which he was entitled as we view the evidence on his part, and the admissions of the respondent that the purchase of the property was a joint investment by her and her husband.

■ Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired without fraud, it is against equity that it should be retained by him who holds it. Zimmern v. People's Bank of Mobile, 203 Ala. 21, 81 So. 811.

■ A constructive trust is a device used by chancery to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs. Ex parte Morton, 261 Ala. 581, 75 So.2d 500.

■ A constructive trust arises when the legal title to property is obtained by one in violation, express or implied, of some duty owed to one who is equitably entitled thereto, and when the property thus obtained is held in hostility to his beneficiary's rights of ownership, but such trusts are often termed trusts in invitum. Fowler v. Fowler, 205 Ala. 514, 88 So. 648.

■ There is a constructive trust where one furnishes money to another with instructions to buy land and take the title in him who furnishes the money, but, in violation of the duty imposed upon him, he wrongfully takes the title in the name of another. Bostic v. Bryan, 263 Ala. 673, 83 So.2d 796.

"A constructive trust in favor of a husband has been held to arise where property is conveyed to his wife on a consideration from him and on her agreement to reconvey to him and where she breaches such agreement, or where the wife with wages of her husband which he has turned over to her purchases property with the understanding that it is to be for the benefit

of both of them. * * *" 26 Am.Jur., Husband and Wife, § 102 at page 729, citing 35 A.L.R. 312, which, in turn, cites Ridky v. Ridky, 226 Mich. 459, 198 N.W. 229.

The Ridky case held that a constructive trust arose in favor of a husband, who turned over his wages to his wife, in property purchased by her with the understanding that it was to be for the benefit of both of them.

It was said in the case of Nester v. Gross, 66 Minn. 371, 69 N.W. 39 (citing 1 Pom.Eq. Jur., § 155; Rollins v. Mitchell, 52 Minn. 41, 53 N.W. 1020), that all instances of constructive trusts may be referred to what equity denominates "fraud," either actual or constructive, including acts or omissions in violation of fiduciary obligations. If one party obtains the legal title to property, not only by fraud, or by violation of confidence or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which belongs to another, equity carries out its theory of double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who in good conscience is entitled to it, and who is considered in equity as the beneficial owner.

The marriage of the complainant and the respondent, Mrs. Putnam, created between them a relationship of confidence and trust, exacting the utmost good faith in their dealing with each other. Endsley v. Darring, 249 Ala. 381, 31 So.2d 317.

In purchasing this property, Mrs. Putnam was acting as the agent of her husband so far as his interest was involved. She was intrusted with the management and purchase. It was distinctly understood, according to the testimony of complainant and the admissions of Mrs. Putnam on the trial of this case, that the transfer of the property was to be for the benefit of both. It was her duty to have had the conveyance made to both, or if to herself alone for any reason, then to have had a trust in his favor distinctly declared in the conveyance.

This was not done. Whether intentional or not, Mrs. Putnam violated the confidence accorded her in closing the transaction to the exclusion of the interest of the complainant.

The sale of the trust property to the respondents Bush should not preclude complainant to some form of relief. It is said in 65 Corpus Juris 968, et seq., which we quoted with approval in the case of Ex parte Morton, supra, as follows:

"While it has been said that the right to follow and recover trust property first existed only with reference to the identical trust property in its original form, which it was necessary to identify, it is now settled that the cestui que trust may follow the trust property through any change in form or species and have the trust attached to the property in its new form, for the product of the trust property follows the nature of the original thing itself. Thus the cestui que trust may generally claim, as subject to the trust, any proceeds which the trustee has received for the trust property, or any property into which the trustee has invested or converted the trust property, or the proceeds thereof, provided, of course, the property claimed can be identified as the product into which the trust property can be traced."

We think that the complainant is entitled to have a trust impressed on the monies now in possession of respondent Putnam, if available to lawful process, that were paid to her by the purchasers of the property, or for them. If said funds are not available to the process of the court for full satisfaction of the trust interest of the complainant, then a trust should be impressed on the balance due under the terms of the mortgage debt representing the purchase price. The impression of this trust should cover one-half of the amount representing the sale price of the property to respondents Bush, plus interest on said sum equal to the per cent that the mortgage and notes bear.

The trial court after this remandment will order a reference for an accounting or employ such other judicial process as may be adequate and lawful to insure payment to the complainant of his one-half share of the proceeds of the sale plus the interest noted, and will enter an appropriate decree impressing a trust on said funds for the use and benefit of the complainant.

For error of the trial court in denying relief to complainant, this cause is due to be reversed and remanded for compliance by the trial court in accordance with the above directions.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, while serving on the Supreme Court at the request of the Chief Justice, and was adopted by the Court as its opinion.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, GOODWYN, MERRILL and HARWOOD, JJ., concur.