ALMON, Justice.
James Howard Landis appeals from a judgment of the Circuit Court denying certain relief. We affirm.
The findings of fact and conclusions of law are set out with commendable clarity in the judgment of the trial court. We have set out pertinent portions of this judgment.
These consolidated actions came on to be heard by the Court and were submitted on the pleading and testimony and evidence presented in open court without jury.
This is a controversy between Dorothy Brock Landis Neal and James Howard Lan-dis who were formerly married to one another and subsequently divorced. These actions were thereafter filed as a result of a dispute between them involving the ownership or right to ownership of certain parcels of land.
The first filed case (Neal v. Landis, No. 77 502-565 WAT filed June 8, 1977 in Jefferson County) alleges a bill to quiet title in Mrs. Neal to two lots in Jefferson County and a declaratory judgment to have an agreement between the parties to convey the two lots and six other described tracts of land declared null and void. Mr. Landis asserts his defenses to these claims and seeks by counterclaim specific performance of the agreement to convey and a declaratory judgment determining the rights and relationship of the parties relating to the property involved.
The second filed case (Landis v. Neal, No. 77 505—432 WCB filed June 30, 1977) was originally filed in St. Clair County and thereafter transferred to this circuit and consolidated with the earlier action. This complaint seeks specific performance of the agreement to convey, an accounting for income and rents for the properties set forth in the agreement, a judgment for monies found to be due for sales of property and income above expenses and a declaration of the parties’ rights and relationship in and to the properties described in the agreement. The answer filed by Mrs. Neal asserts certain defenses and seeks by counterclaim to have the agreement declared null and void, and a declaration that Mr. Landis has no right, title or interest in or to the property described in the agreement to convey. The controlling issues turn upon the validity and effect of two deeds dated July 21, 1972 wherein Mr. Landis conveyed his interests in seven tracts of land in Jefferson County and one tract in St. Clair County to Mrs. Landis (now Neal) and the validity and effect of an agreement dated July 21, 1972 *277 purportedly signed by Mrs. Neal (then Lan-dis) agreeing to convey the eight tracts of land within a period of ten years.
Mrs. Neal contends in support of her claim and in defense of the counterclaim that the agreement is null and void and of no force and effect on account of:
1. Lack of agreement or specificity of option terms and conditions;
2. No agreement in that she did not knowingly execute it;
3. Fraud or misrepresentation in the inducement;
4. Obligations set forth in the agreement were incorporated or merged with a property settlement agreement of the parties that was made a part of the final judgment of divorce between them;
5. Equitable estoppel to assert rights under the agreement and unclean hands doctrine;
6. The property rights involved were determined and vested in the prior divorce decree and may not be modified in a subsequent proceeding.
Mr. Landis contends that:
1. The two deeds and the agreement are valid and the agreement due to be enforced.
2. A constructive trust was created and that Mrs. Landis is due to account for sales and income from that property.
3. When the purpose of the trust has been accomplished, the property is due to be returned to Mr. Landis free of the trust but subject to any mortgages.
Upon consideration of the matters presented, the Court makes the following findings:
1.The parties were married in 1945 in Jefferson County, Alabama, and lived together until their divorce in St. Clair County on December 29, 1973. Mrs. Neal was 20 years of age at the time of their marriage and was 53 years of age at the time of trial. Mrs. Landis appears to be approximately the same age. There were five children born of their marriage, two of whom are still minors (ages 16 and 14). The minor children were ages 12 and 10 at the time of divorce.
2. During the period from 1945 to approximately 1958, Mr. Landis was employed by several companies estimating, selling and installing glass in the construction industry.
In approximately 1958, Mr. Landis became self employed under the name of Lan-dis Glass Company. A business was incorporated as Landis, Inc., in 1966 by Mr. Landis and a short time later sold to Nelson Brantly Co.
In January 1976, Mr. Landis incorporated Leeds Automatic Door Co. and was employed as its President. Apparently during the intervening years Mr. Landis incorporated several other companies in the construction materials business and one involving aviation.
During the period that Mr. Landis worked as an employee for others, Mrs. Landis (Neal) occupied herself as a homemaker and cared for their children. Thereafter, when Mr. Landis became self employed, Mrs. Landis (Neal) did office, secretarial and bookkeeping work for the various companies without compensation. She was also an officer and nominal stockholder in some of the corporations.
3. During his business career, commencing in approximately 1962, Mr. Landis was very active in purchasing for investment real estate, including rental properties. These properties were negotiated by for Mr. Landis and paid for from monies generated in his various business activities and from rental income, most were heavily mortgaged. Mrs. Landis (Neal) had no separate estate and did not directly contribute financially to their acquisition costs.
4. When these various properties were acquired, with the exception of one parcel, title to them was taken in the name of both parties as joint tenants with right of surviv-orship or as tenants in common. Title to one vacant lot was taken in Mr. Landis’ name alone and title to the home place was vested solely in Mrs. Landis (Neal).
5. On July 21, 1972, Mr. Landis conveyed all of his title and interest in all of the properties in question to Mrs. Landis *278 (Neal). This was accomplished by two deeds that had been prepared by Mr. Lan-dis’ attorney. One of these deeds related to seven tracts of land in Jefferson County and the other to one tract of land in St. Clair County.
Simultaneous with the execution of the deeds, Mrs. Landis executed an agreement to convey all eight tracts of land to Mr. Landis or his assigns. The agreement provided as follows:
“This agreement shall be for a period of Ten Years from this date and may be exercised by the grantee at any time pri- or thereto on ninety days written notice to the grantor. In the event of the demise of the grantee within the period of this agreement, this agreement is null and void.”
The agreement to convey included not only the title to the properties included in the two deeds, but all of the title that had been previously vested in Mrs. Landis by virtue of the deeds delivered to Mr. and Mrs. Lan-dis when the properties were acquired. Pri- or to the agreement, title to six of the seven tracts described in the agreement was held by the parties jointly or as tenants in common. No monies changed hands at the time of the execution of the deeds or the agreement.
6. Mrs. Landis (Neal) knowingly and voluntarily accepted delivery of the said deeds and contemporaneously, knowingly and voluntarily executed the said agreement to convey. These acts were done by Mrs. Landis as the product of the confidence and trust that existed between the parties at such time as husband and wife.
7. The reason the timing for the deeds and agreement appear to be because of Mr. Landis’ personal guaranty of future business obligations involving one of his corporations and its supplier of glass doors and products. Mr. Landis was also personally obligated on several bank loans and business accounts. It was not shown that any of these obligations were in arrears at the time of transfer. The evidence further indicated that Mr. Landis had a possible liability exposure to passengers and lessees of an airplane owned by him.
The deeds were recorded at the time of their execution. The agreement to convey was recorded by Mr. Landis on June 1,1976, almost four years after its execution.
8. Thereafter, apparently in 1973, the parties began having marital difficulties which later that year resulted in divorce. On December 7, 1973 the parties executed a sales agreement to sell a parcel of property in St. Clair County identified as the “Moody” property. In connection with that sale, the parties entered into a written agreement relative to the distribution of the proceeds of sale. This agreement was negotiated by the parties’ attorneys without mention by Mr. Landis or his attorney of the July 1972 agreement.
At or about this time, the parties’ marital problems became irreconcilable and negotiations for a divorce agreement commenced between the parties’ attorneys. After lengthy negotiations, a property settlement agreement was reached and signed by the parties on December 28. This agreement was incorporated in a final judgment of divorce rendered on December 29, 1973. Mr. Tingle, one of Mrs. Landis’ attorneys, testified that on the date of the settlement agreement he had no knowledge of the existence of the 1972 agreement, that it was not disclosed by Mr. Landis’ attorney nor was its existence revealed by Mr. Landis. Mr. Landis confirmed that he had not mentioned the agreement to Mr. Tingle. The evidence was contradictory whether Mr. Landis’ attorney was aware of the agreement's existence.
9. The final judgment of a divorce with the property settlement agreement is in evidence here. Pertinent to the issues here are provisions providing:
A. $430.00 per month alimony to Mrs. Landis until she remarries and $400.00 per month per child support for the two minor children of the parties.
B. Agreement to sell three North Birmingham lots owned by Mrs. Landis (one owned as a consequence of the 1972 agreement) to pay current taxes and towards *279 marital debts of the parties, and affirmance of the agreement to sell the “Moody” property [Par. 9 and 9(a) of Divorce].
C. Recognition that Mrs. Landis is vested with title to certain described real estate (the same property that was described in the 1972 agreement less property previously sold) and that all of it is income producing property, but that such income is insufficient to pay the monthly mortgage payments on it. Agreement to refinance the mortgages on some of the property to reduce their monthly mortgage payments from $2000 to $1000 per month with Mr. Landis agreeing to pay to Mrs. Landis, in addition to alimony and support payments, the net difference between all rentals and all mortgage payments until the income exceeds the mortgage payments. Recognition that the stated alimony and support is a minimum sum necessary for Mrs. Landis’ living expenses [Par. 11 of Divorce]
D. Agreement that Mr. Landis will, at a future date, receive credit against the alimony and support sums for net rental income in excess of mortgage payments. Assumption by the parties,
“. . . that the net rental income properties will eventually afford [Mrs. Landis] and her children a comfortable living and in accordance with her style of living as she and her children have long since become accustomed to.” [Par. 12 of Divorce]
10.On or about May 3, 1974, at Mr. Landis’ suggestion and request, Mrs. Landis sold one of the lots that was among the list of lots subject to the 1972 agreement. (Lot 17, Block 195, Elyton). This sale was negotiated by Mr. Landis and, under its terms, Mrs. Landis received a purchase price of $69,000. The evidence shows that Mr. Lan-dis requested this sale and that Mrs. Landis deposited the money in her personal account and thereafter used some of it for living expenses for her and the children and for some of the mortgage payments. The evidence indicates that Mr. Landis was in arrears on alimony and support payments at this time. At no time during this transaction did Mr. Landis assert any claim to this property or to its sale proceeds.
11. Approximately January 30, 1975, Mr. Landis, by letter to Mrs. Landis, offered to purchase from her the Leeds property. This property was also set forth on the list of properties described in the 1972 agreement (Tract VIII, St. Clair County). Again, there was apparently no mention between them of the said agreement.
12. Thereafter, on or about May 1975, Mrs. Landis sold another parcel of land included in the 1972 agreement to convey (Lot 4, Block 17, Crestline Gardens). She received proceeds of $7999 for her equity in the property. Mr. Landis had no knowledge of this transaction at the time of its occurrence.
13. Subsequently, in or about June 1976, the parties returned to the Circuit Court in St. Clair County in connection with a rule nisi filed in the divorce action and a motion to modify filed by Mr. Landis. During this proceeding, Mr. Landis brought forward the 1972 agreement to convey and filed it for record on June 1, 1976. Until that time, the agreement had been retained by Mr. Landis and kept in his office. Thereafter, these actions were filed.
14. The parties stipulated that at the time that these actions were filed, Mrs. Landis (Neal) was in actual, peaceful possession of all of the properties involved, except those previously sold, and that no other suits are pending asserting title thereto except these consolidated actions.
The threshold consideration is the validity of the two deeds and the agreement to convey executed by the parties on July 21, 1972.
The two deeds are regular on their respective faces, for recited considerations, properly executed, duly acknowledged and were thereafter delivered by the named grantor to the named grantee. Mrs. Neal (Landis) relies on their validity and Mr. Landis does not challenge them. It is, therefore, concluded that the 1972 deeds are valid.
The validity of the 1972 agreement presents a more difficult question. As *280 heretofore found, Mrs. Landis knowingly and voluntarily executed and delivered it. It is less clear that she realized that by its terms the agreement related to the joint tenancy or tenancy in common title to six of the properties previously owned by virtue of the deeds of acquisition. However, there is no doubt that she trusted her then husband to not betray the marital relationship that existed between them at that time and thereby voluntarily executed the agreement with no other assurance required other than it was necessary for the conduct of their family finances and land investment plans.
The consideration and mutuality of the agreement is suspect, however, when examined or viewed from Mrs. Landis’ standpoint. The two deeds conveyed all of Mr. Landis’ interest in and to eight parcels of land. Inasmuch as Mrs. Landis already owned an undivided one-half interest in six of them, the effect of the deeds was to convey the entire title of two parcels to Mrs. Landis and an undivided one-half interest in six parcels. In return for the value of such transfers, the agreement to reconvey, if exercised, would require the reconveyance of all title Mr. Landis formerly owned plus the undivided one-half interest that Mrs. Landis owned in six lots prior to 1972. The net effect of the deeds and agreement would be that for the consideration of Mr. Landis’ conveying to Mrs. Lan-dis all title he owned in the eight parcels, she would agree to reconvey such title received and all additional title in the parcels that she had previously owned. If the agreement were to be enforced in such manner, it would be grossly inequitable and lacking in mutuality.
# # # # * *
The question is then presented as to the effect, if any, of the property settlement agreement that was incorporated into the final judgment of divorce between the parties rendered in 1973. It is clear that the rights, duties and obligations of the parties were negotiated and settled upon the basis that title to all of the property was already vested in Mrs. Landis (Neal) and that at some future date the net income therefrom would afford Mrs. Landis and the children a comfortable living in accordance with their former standard of living. Until such time, it was recognized by the parties that the stated alimony and support ($830 per month total) was a minimum sum necessary for the living expenses of Mrs. Landis and the children.
Pursuant to the divorce agreement, Mrs. Landis (Neal) has kept current all of the mortgage payments and taxes on the properties and sold the North Birmingham lots to pay the marital debts. Mrs. Landis has also sold the “Moody” property and distributed the proceeds according to the parties’ agreement. Notwithstanding Mrs. Landis’ reliance and acts pursuant to the divorce agreement, Mr. Landis now seeks to require Mrs. Landis to convey to him the properties that were the foundation of the settlement between them.
The Court is of the opinion that Mr. Lan-dis is now estopped to enforce the 1972 agreement to convey. Both promissory es-toppel and equitable estoppel are applicable here. Mazer v. Jackson Ins. Agency, 340 So.2d 770. In consideration of such, the Court concludes that the agreement to re-convey is now void and of no force and effect.
As stated previously, Mr. Landis also contends that the agreement to convey and the divorce agreement created a constructive trust in favor of Mr. Landis and that Mrs. Landis is due to account to him for income and sales proceeds from the properties. In consideration of the above holding, this claim turns solely upon an interpretation and enforcement of the provisions of the final judgment of divorce between the parties. In essence, it is a claim to either enforce or modify the divorce judgment. Because of the features involving periodic alimony and child support payments, the Court rendering the divorce has continuing jurisdiction and the Court is of the opinion that the question of whether a constructive trust has been created to finance the divorce provisions must be asserted and adjudicated before the Court rendering the divorce. Such adjudication would be inappropriate here.
*281 The operative effect of this judgment was to declare the 1972 agreement to recon-vey null and void, quiet title to two parcels of property in the appellee and deny all of the appellant’s claims.
Thus, the issues presented for our consideration are whether the trial court erred in determining that the appellant was es-topped from asserting his rights under the 1972 agreement to reconvey and whether the trial court properly refused to rule on the constructive trust claim.
The main thrust of the appellant’s contention regarding the estoppel issue is that the trial court erred in its application of the elements of estoppel enunciated in Mazer v. Jackson Ins. Agency, 340 So.2d 770 (Ala.1976). We disagree with the appellant’s contentions for the reasons noted below.
The appellant and appellee, aided by their respective attorneys, prepared and executed a property settlement agreement which can only be described as detailed and comprehensive. This property agreement formed an integral part of the divorce decree which dissolved their marriage. The agreement by its express terms vested the appellee with the absolute legal title to the property in question.
It would be not only inequitable, but also unconscionable to allow the appellant to produce an agreement and assert legal rights thereunder where that agreement predated the divorce decree and where that agreement altered the legal effect of the divorce decree in such material respects. In light of the comprehensive and final character of the divorce decree, we are of the opinion that the contractual obligations contained in the 1972 agreement which are inconsistent with the property settlement obligations contained in the divorce decree should have been preserved in the latter instrument. Therefore, the trial court correctly determined that the appellant was estopped to assert any rights under the agreement to reconvey.
We agree with the appellant that the trial judge has implicitly rejected his constructive trust arguments by holding that the 1972 agreement was void. We disagree with his contention that the divorce decree established an express trust which recognized the pre-existing constructive trust. The divorce decree not only failed to create an express trust, but it also in clear, unequivocal language vested the title to this property in the appellee. Therefore, assuming arguendo that the 1972 agreement established some or all of the elements of a constructive trust, the legal effect of that instrument was superseded by and subsumed in the divorce decree.
In Putnam v. Putnam, 274 Ala. 472, 150 So.2d 209 (1963), this Court stated with reference to constructive trusts that
. [i]f one party obtains the legal title to the property, not only by fraud, or by violation of confidence or of fiduciary relations, but in any other unconscien-tious manner, so that he cannot equitably retain the property which belongs to another, equity carries out its theory of double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who in good conscience is entitled to it, and who is considered in equity as the beneficial owner.
274 Ala. at 476, 150 So.2d at 213.
In this case, the appellee did not acquire the legal title to this property by fraud, violation of confidence or of fiduciary duty or any other unconscientious means; she acquired the legal title to the property pursuant to the terms of, for aught appearing otherwise, a valid divorce decree. For the reasons stated above, we will not allow a pre-existing agreement to alter the legal effect of the divorce decree and therefore, under the principle in Putnam, supra, the declaration of a constructive trust is inappropriate.
This case was tried ore tenus. We have reviewed the record and concluded that the findings of the trial court are amply supported by the evidence.
AFFIRMED.
TORBERT, C. J., and BLOODWORTH, FAULKNER and EMBRY, JJ., concur.