SHORES, Justice.
Dan Cole Mitchell died in 1977. He left a will leaving his entire estate to his former wife, but by operation of law, the will had been revoked by his divorce from her. Thus, his estate passed by intestacy to his five surviving children in equal shares. His oldest child, appellee Dianne M. Richard, was appointed administratrix by the probate court of Cullman County.
Among the assets of the estate was all of the outstanding stock of Mitchell Motors, Inc. The assets of this corporation were sold in 1980, and the corporation was liquidated and dissolved. As a part of the transaction, the real estate that the corporation had leased from the decedent was sold.
At this time, the administratrix and the other four heirs agreed that the administra-trix would receive her one-fifth distributive share of the estate in cash, and the other four heirs would receive their shares by taking a note from the purchasers of the real estate, which was sold for $514,000, $14,000 of which was paid in cash. A note for $500,000, payable over fifteen years at nine and one-half percent interest, was executed by the purchasers and made payable to the other four heirs as tenants in common. It was agreed that the administratrix would receive some $80,000 in cash at that time, with the remainder of her one-fifth share in the estate to be made up out of the proceeds of the remainder of the estate. The administratrix distributed $2,500 to each heir as a partial distribution at that time.
When the remainder of the estate was liquidated and the entire remaining cash proceeds paid to the administratrix, there was not enough money to bring her share to one-fifth of the entire estate. The trial court found that there was no agreement between the parties “as to what to do when the assets were insufficient to adequately compensate Mrs. Richard.”
The record discloses that as of September 20, 1980, the schedule of beneficiary distribution was as follows:
*839 Claire Mitchell Puckett: Cash, $5,200.00; other distribution including one-fourth mortgage on Ford property, $140,607.58; for a total distribution of $145,807.58.
Homer Wesley Mitchell: Cash, $5,358.95; other distribution, $135,727.49; for a total of $141,086.44.
Dan Cole Mitchell, II: Cash, $3,280.10; other distribution, $138,154.15; for a total of $141,434.25.
Janease Mitchell Hamilton: Cash, $3,020.00; other distribution, $138,455.17; for a total of $138,475.17.
Dianne Mitchell Richard: Cash, $74,-000.00; other distribution, $14,877.00; for a total of $88,877.00.
The trial court, faced with this situation, noted that “it seems manifestly unfair to direct the four heirs or Mrs. Richard to pay in sums of money where a cash shortage has always been a problem for these children.” The court then entered its order:
“IT IS THEREFORE ORDERED AND ADJUDGED THAT:
“1. The interest of the four heirs in the $500,000.00 promissory note to them at the interest rate of 9-1/2% is attached with a constructive trust in favor of Dianne M. Richard and she owns a fractional interest in that note, and interest thereon, equal in value to any deficient amount due her. Dianne M. Richard’s fractional share is due and payable to her as each payment on the promissory note is received.
“2. Should there be any shortage, or an amount owed and not paid Mrs. Richard for her interest in the estate, then the Court on petition may reconsider how to secure her interest at any time.
“3. The accountant that has worked with the estate will continue to do so and under this order of the Court will determine the fractional share of the income from the promissory note due Mrs. Richard, devise a plan for the payment to her, and will submit his bill for payment from estate funds, or from income payable from the promissory note.”
On motion of the four heirs, the court amended its judgment directing the accountant to make his calculations based upon the face value of the note. The four heirs appealed. We affirm.
The heirs contend that the court erred in refusing to give the promissory note its fair market or discounted value in assessing the proper distributive share of each heir. We cannot agree. It is not disputed that Mrs. Richard has not received her full distributive share. As she points out in brief, the court had authority to order this discrepancy corrected in a number of ways: (1) The court could have ordered payment by the four heirs of the deficiency directly and at once; (2) the court could have ordered that all payments on the note be applied to the deficiency until it was eliminated; or (3) the court could have imposed a constructive trust on the note in Mrs. Richard’s favor to the extent of the deficiency, and let her take her pro rata share, plus interest, for the remaining term of the note.
The four heirs argue that the judgment of the court should be reversed and the court should be directed to make a redistribution of all of the assets of the estate, giving each heir an equal one-fifth part of each asset. While we might well have affirmed a decree so holding, we cannot say that the trial court abused its discretion in entering the decree appealed from. It seems to us that the trial court’s decree is fair and equitable, and it should not be reversed merely because some other equitable solution was also possible.
In the exercise of its equity jurisdiction, a circuit court is entirely justified in molding a decree which adjusts the equities of all the parties. Blair v. Morris, 212 Ala. 91, 101 So. 745 (1924). By imposing a constructive trust on the note to assure that the share of each heir in the estate was equal, the court was within its power. As we held recently in Coupounas v. Morad, 380 So.2d 800 (Ala.1980):
“A constructive trust is a creature of equity that operates to prevent unjust enrichment; such a trust will be imposed when a property interest has either been *840 acquired by fraud or where, in the absence of fraud, it would be inequitable to allow the property interest to be retained by the person who holds it. Brothers v. Moore, 349 So.2d 1107 (Ala.1977); Sims v. Reinert, 285 Ala. 658, 235 So.2d 802 (1970); Putnam v. Putnam, 274 Ala. 472, 150 So.2d 209 (1963). It is also clearly inherent in the very nature of equity proceedings that the trial court is authorized to mold its decree so as to adjust the equities of all parties and to meet the obvious necessities of each situation. BBC Investment Co. v. Ginsberg, 280 Ala. 148, 190 So.2d 702 (1966); Bouldin v. City of Homewood, 277 Ala. 665, 174 So.2d 306 (1965) (on rehearing).”
380 So.2d at 803.
The judgment appealed from is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.