60 So.2d 346

### SNOW v. STATE.

6 Div. 337.

Supreme Court of Alabama.

Aug. 27, 1952.

E. E. Gilmer and Dempsey Pennington, Birmingham, for appellant.

Si Garrett, Atty. Gen., and H. Grady Tiller and Willard W. Livingston, Asst. Atty. Gen., for appellee.

LAWSON, Justice.

The State Department of Revenue determined that Margaret E. Snow had failed, in her income tax return for 1949, to report certain income for which she was taxable and levied a deficiency assessment against her. Margaret E. Snow appealed to the circuit court of Walker County, in equity, she being a resident of that county. § 140, Title 51, Code 1940. The assessment of the State Department of Revenue was upheld and Margaret E. Snow has appealed to this court.

The deficiency assessment arose out of the sale of three city lots situated in the city of Birmingham, which Margaret E. Snow conveyed by deed on, to wit, February 19, 1949, to Edwards Motor Company,

Inc. The amount of the deficiency assessment, $1,287.24, was based on the finding of the State Department of Revenue that as a result of the sale Margaret E. Snow realized a taxable gain in the amount of $26,500.

From the facts hereafter set out, it will appear that the ultimate question for decision in this case is, who is the taxpayer, Margaret E. Snow or her brother, Dr. John W. Snow?

Dr. John W. Snow has been a resident of Jefferson County for a number of years. He purchased the three lots in 1926 or 1927 for the sum of $61,500. In 1933, while he and his sister, Margaret E. Snow, were both living in Palos, Jefferson County, he informed his sister that "he wanted to use her name to transfer this property into her name." The sister replied that she would prefer that he not pursue that course if he could handle the property some other way.

Without any further reaction from his sister, Dr. Snow proceeded to have two deeds executed on January 5, 1933, wherein he and his wife conveyed the three lots to her. In one of the deeds, wherein Lots 6 and 7 of Block 68, according to the plan and survey of the City of Birmingham, were conveyed to Margaret E. Snow, the consideration expressed therein was $1,000 and other good and valuable consideration and the assumption by the grantee of an outstanding mortgage indebtedness in the amount of $6,000. The other deed conveyed Lot 5 of the said survey and the consideration expressed therein is the sum of $1,500 and the assumption by grantee of a mortgage indebtedness of $5,000.

Margaret E. Snow never paid any money to her brother as consideration for the conveyances, nor did she pay off any of the mortgage indebtedness.

It does not appear that the deeds were executed for the purpose of defrauding existing creditors, judgment or otherwise. According to Dr. Snow, the reason for the execution of the deeds was his desire to discourage the filing of damage suits against him, as had been done so often in the past. He took this action on advice of an attorney.

After the deeds had been duly executed, but without the knowledge of the grantee named therein, Dr. Snow deposited them in the office of the judge of probate of Jefferson County for recordation. After the deeds were recorded on January 30, 1933, they were returned to Dr. Snow and remained in his possession.

Thereafter these lots were assessed for ad valorem taxes in the name of Margaret E. Snow. She was aware of that fact, but the taxes were paid by Dr. Snow.

Margaret E. Snow has never been in the actual possession of the lots. She never received any rents or income of any kind from them. Dr. Snow exercised dominion and control over the property. When the lots were purchased by him in 1926 or 1927, there were a few houses on one or more of them, occupied by Negro tenants. For a few years Dr. Snow, through a rental agent, received rents from the occupants of the houses. But the houses were later removed from the property and as we understand the record, from the date of their removal until the date the lots were sold to Edwards Motor Company, Inc., the property produced no income. It does not appear from the record whether the houses were removed prior or subsequent to the date on which the deeds from Dr. Snow and wife to Margaret E. Snow were executed.

The lots are situated near the plant of Edwards Motor Company, Inc. That concern became interested in purchasing them for the purpose of constructing thereon additions to its existing plant. Officials of that concern employed a real estate firm to negotiate for their purchase. In the latter part of 1948 Dr. Snow was contacted by agents of the real estate firm in an effort to secure the property for its client. No agreement was reached. The real estate agents later contacted Margaret E. Snow, who informed them that, while the record title was in her name, the property was that of her brother, Dr. Snow. Negotiations with Dr. Snow continued and he finally entered into a contract for the sale of the lots without ever having discussed the matter with his sister. Thereafter a deed was

prepared and Dr. Snow advised his sister that it was his desire that she execute the deed conveying the property to Edwards Motor Company, Inc. A few days later Dr. Snow, accompanied by the real estate agent and a notary public, went to the home of Margaret E. Snow, where she executed the deed. The purchase price was not paid at that time and the deed which Margaret E. Snow had executed to Edwards Motor Company, Inc., remained in the possession of Dr. Snow. About ten days later a check in the sum of $40,000 was delivered to Dr. Snow, payable to Margaret E. Snow. Dr. Snow in return delivered the deed. Later Dr. Snow had the check sent to his sister, who endorsed it and returned it to him. It was later deposited in the First National Bank of Birmingham in an account in the name of "Mrs. John W. Snow, Jr., MD." It seems that Dr. and Mrs. Snow, under an agreement with the bank, were both permitted to draw on this account.

In his income tax return for 1949, Dr. Snow included this real estate transaction, claiming a loss thereon. As before indicated, Margaret E. Snow did not include the real estate transaction in her return for 1949. The State Department of Revenue disallowed Dr. Snow's claim and, as shown above, entered a deficiency assessment against Margaret E. Snow on the theory that she was the owner of the property and had received a gain of $26,500 thereon, on which she was liable for income tax.

We have been unable to find any case from this or any other court wherein identical facts have been considered.

Section 384, Title 51, Code 1940, provides in part as follows: "The term 'gross income' as used herein: (1) Includes gains, profits and income derived from * * * sales, or dealings in property whether real or personal, growing out of ownership or use of or interest in such property; * * *."

■ The conveyance of January 5, 1933, from Dr. Snow to his sister contains no language indicating that the grantee therein was to hold the property as trustee for the grantor. Hence, if Margaret E. Snow in a controversy between herself and Dr. Snow had taken the position that she was the owner of the property in fee simple, we doubt that Dr. Snow could have successfully contended that she was only a trustee. An express trust in real estate may not be created by parol. Patton v. Beecher, 62 Ala. 579; Brackin v. Newman, 121 Ala. 311, 26 So. 3; O'Briant v. O'Briant, 160 Ala. 457, 49 So. 317; Chesser v. Motes, 180 Ala. 563, 61 So. 267; Bartlett v. Bartlett, 221 Ala. 578, 130 So. 194; Ammons v. Ammons, 253 Ala. 82, 42 So.2d 776; Talley v. Talley, 248 Ala. 84, 26 So.2d 586. Dr. Snow could not prevail against his sister on the theory that a resulting trust was created, for that class of trust arises "only where one has purchased property with the funds of another and taken title in himself." Milner v. Stanford, 102 Ala. 277, 14 So. 644. Likewise the elements of a constructive trust are absent. Zimmern v. People's Bank, 203 Ala. 21, 81 So. 811; Fowler v. Fowler, 205 Ala. 514, 88 So. 648.

So for the purposes of this appeal it may be said that Margaret E. Snow, at the time the assessment was made, had the record legal title, of which her brother, Dr. Snow, could not have divested her on the ground that she held as a trustee.

■ But we are here concerned with a problem of income taxation. The command of income and its benefits marks the real owner of property for income tax purposes. Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406; Hay v. Commissioner of Internal Revenue, 4 Cir., 145 F.2d 1001, 160 A.L.R. 548. Or, as stated by the late Justice Holmes in Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916: "But taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." In Helvering v. Horst, 311 U.S. 112, 119, 61 S.Ct. 144, 148, 85 L.Ed. 75, it is said: "The dominant purpose of the revenue laws is the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid." And in Helvering v. Clifford, 309 U.S. 331, 334, 60 S.Ct. 554, 556, 84 L.Ed. 788, it was observed: " * * * Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which

inventive genius may construct as a refuge from surtaxes should not obscure the basic issue. That issue is whether the grantor after the trust has been established may still be treated, under the statutory scheme as the owner of the corpus."

■■ The undisputed facts in this case show that the transfer of the title was not made for the purpose of tax evasion; that Margaret E. Snow never actually claimed ownership of the property or received any benefits therefrom; that, on the contrary, she and her brother at all times recognized that she was holding the title as a mere accommodation to him, but that he was in fact the real owner of the property, over which he exercised the right of control and received such benefits as it produced.

Under such circumstances we think Dr. Snow and not appellant is the taxpayer. See Michael v. Commissioner of Internal Revenue, 16 B.T.A. 1365; Paymer v. Commissioner of Internal Revenue, 2 Cir., 150 F.2d 334; 112 West 59th Street Corp. v. Helvering, 62 App.D.C. 350, 68 F.2d 397. The fact that payment of taxes might not thereby be forthcoming is not controlling. We observe that to follow the insistence of the State that appellant, under the facts here presented, is the taxpayer merely because she has the record title, would unquestionably provide a means of much evasion of the payment of income tax.

We are of the opinion that appellant is not liable for the taxes assessed. The decree of the trial court is reversed and the cause remanded so that a decree may be entered in accordance with this opinion.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON, STAKELY and GOODWYN, JJ., concur. FOSTER, J., dissents.

FOSTER, Justice (dissenting).

My view is that the deed from Dr. Snow to appellant is valid as between them for all purposes. Dr. Snow had thereafter no right, legal or equitable, in it or any benefits from it. Appellant, as the owner of the property on the next October 1, thereafter would be personally liable in a suit for ad valorem taxes assessable as of that date. There can be no defense to such a claim of liability that the deed to her was not intended to vest in her the beneficial ownership of the property. Likewise, she must take all other burdens of ownership, as to which she should be estopped to deny such ownership. The question here is not whether the taxing authorities may put the burden on Dr. Snow. But I think the State taxing authorities may insist upon enforcing against appellant the burden of such ownership. That ownership is perfect and complete to the extent that neither she nor Dr. Snow can in equity or at law or anywhere else dispute the legal effect and consequences of the fact of ownership incident to the deed to her by him. My view is that this conclusion is not inconsistent with the authorities in the majority opinion.