**ESTATE OF Elbert B. WHITT, Loyd Whitt, Executor, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 84–7026.

United States Court of Appeals, Eleventh Circuit.

Feb. 4, 1985.

---

Before RONEY and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an appeal from a judgment of the Tax Court upholding the determination of the Commissioner of Internal Revenue ("Commissioner") that there were deficiencies in federal estate and gift taxes paid by the estate of Elbert B. Whitt ("Estate").

Elbert B. Whitt, a resident of Ardmore, Limestone County, Alabama, died June 14, 1969, at the age of 82. On September 12, 1975, the executor of his estate, his son, Loyd H. Whitt, filed a federal estate tax return. The return stated that the decedent owned no real estate at the time of his death and further represented that "[i]n 1959 the decedent and his wife deeded all farmlands owned by them to their children."

Following an investigation, the Commissioner determined that during his lifetime Elbert Whitt had owned 18 parcels of farmland which he had gratuitously conveyed to his children and one grandchild while retaining the actual possession or use of or the right to income from the property until his death. The Commissioner thus determined that these tracts, valued at $417,526 at the time of death, were includable in the

decedent's gross estate under Section 2036(a)(1) of the Internal Revenue Code of 1954 ("IRC") (26 U.S.C. § 2036). Alternatively, the Commissioner determined that any of these parcels which were not effectively conveyed before Whitt's death were taxable under IRC § 2033 (26 U.S.C. § 2033) as property in which the decedent had an interest at the time of his death.

As a second alternative position, the Commissioner determined that, although the decedent may have effectively conveyed all of his interest in these parcels to his children, these were gratuitous conveyances for less than adequate and full consideration, and thus constituted gifts subject to the federal gift tax under IRC § 2501 *et seq.* (26 U.S.C. § 2501 *et seq*). The Commissioner further determined that these gifts were not completed until the recordation of the deeds and that consequently the gift tax on each conveyance was due in the year in which the deed was recorded.

The Estate petitioned the Tax Court for review of these deficiency determinations, contending that all of Elbert Whitt's interest in these parcels had been effectively conveyed to the respective grantees during his lifetime. Thus, none of the property was includable in the decedent's estate. Moreover, the land was in every instance conveyed for full and adequate consideration, either in cash or in services performed for the decedent. In any event, even if these conveyances were gifts, they were complete and irrevocable at the time the deeds were delivered to the respective grantees. Thus, each conveyance was subject to the gift tax when the deed was executed and delivered, not when it was recorded.

At the hearing before the Tax Court, the Estate, as the petitioner, introduced into evidence the warranty deeds executed by the decedent conveying 15 of the 18 parcels. Another deed was introduced whereby third parties conveyed one of the parcels to one of the decedent's sons. The Estate proffered only one witness, an attorney, to testify as to the validity and effectiveness of these deeds to transfer title under the laws of Alabama. The Tax Court excluded this testimony. The Estate then rested its case.

The Commissioner called several witnesses, including several of the decedent's children, all of whom were cross-examined by the Estate.

As to 11 of the parcels, the Tax Court sustained the Commissioner's alternative determination that they were includable in the decedent's gross estate pursuant to Section 2033. It also concluded that six of the parcels were gifts subject to gift taxes in the years of recordation, 1963 or 1964. The court found that only one parcel had actually been sold during Whitt's lifetime and was thus not subject to either tax.

## BACKGROUND

At issue are 18 separate tracts of rural land of varying size—14 in Limestone County, Alabama, three in Madison County, Alabama, and one in Tennessee. A summary chart of the conveyances involved is set forth in the margin.[1] It may

1.

| Tract No. | Date of Deed | Date Recorded | Stated Grantee | Approximate No. of Acres | County | Fair Market Value Date of Death | Fair Market Value When Deed Recorded |
|-----------|--------------|---------------|----------------|--------------------------|--------|--------------------------------|--------------------------------------|
| 1 | 8/21/59 | 9/11/64 | Alton Whitt | 118.5 | Limestone | $32,588 | $24,352 |
| 2 | 8/21/59 | 2/28/64 | Audry Whitt | 63 | Limestone | 18,900 | 14,123 |
| 3 | 8/21/59 | 2/28/64 | Audry Whitt | 70 | Limestone | 21,000 | 15,692 |
| 4 | 8/21/59 | 2/28/64 | Audry Whitt | 50 | Limestone | 15,000 | 11,209 |
| 5 | — | — | Audry Whitt | 40 | Madison | 12,000 | 8,967 (1964) |
| 6 | 8/21/59 | 7/12/63 | Loyd Whitt | 160 | Limestone | 48,000 | 33,838 |
| 7 | 8/21/59 | 9/11/64 | Mahlon Whitt | 118.5 | Limestone | 32,588 | 24,352 |
| 8 | 8/21/59 | 3/13/64 | Mary Whitt Richardson | 60 | Limestone | 18,000 | 13,451 |

be noted that 12 of these deeds were executed on August 21, 1959, and that all of the introduced deeds save one were recorded over a 15-month period between June 21, 1963 and September 11, 1964.

Elbert Whitt was a farmer who had utilized primarily tenant farmers and mules in cultivating his lands in northeastern Alabama and nearby parts of Tennessee. His sons testified that at his age he felt uncomfortable shifting to the use of tractors and other modern farming equipment and techniques, and so he decided to turn his land over to his children. Some of it was deeded over to three of his sons in 1952. Deeds on Whitt's remaining farmland were executed on August 21, 1959. Each recited the receipt of $10 and other valuable consideration.

While these deeds appeared to dispose of all of Elbert Whitt's farm properties, he continued to receive commodity program payments from the Agricultural Stabilization and Conservation Service ("ASCS") until his death. Moreover, in his 1967 and 1968 income tax returns, he reported income and expenses from the raising of cattle, swine and cotton. He also claimed depreciation of numerous farm implements, including three tractors, one of which had been purchased in March 1959. The depreciation schedules attached to these returns also indicated that Elbert Whitt had regularly purchased agricultural implements after the execution of the deeds in August

1959, both before and after the recordation of the various deeds.

Following is a recitation of the facts developed with respect to each of the 18 tracts:

*Tract No. 1*

On August 21, 1959, Elbert and Nellie Whitt conveyed 118.5 acres in Limestone County by warranty deed to Alton Whitt, their son. Although the deed recited the receipt of $10 and other considerations, Alton did not pay any cash. Alton was unmarried and lived at home with his parents until their deaths. During this time he performed services for his parents, including working around the farm and staying up nights to care for Elbert after his stroke in December 1968. He testified that he would have performed these services anyway, whether or not he had received the land.

Alton did not farm the land which he received from his parents himself. However, he did permit his brothers to farm it. He also cut timber on the property from time to time. At some time prior to Elbert's death, Alton received a check from the Tennessee Valley Authority in payment for a right of way across the land. At no point in his testimony did Alton indicate whether any of these activities took place before his deed was recorded on September 11, 1964.

| Tract No. | Date of Deed | Date Recorded | Stated Grantee | Approximate No. of Acres | County | Fair Market Value Date of Death | Fair Market Value When Deed Recorded |
|---|---|---|---|---|---|---|---|
| 9 | 8/21/59 | 3/13/64 | Margaret Ann Whitt | 40 | Limestone | 12,000 | 8,967 |
| 10 | 8/21/59 | 3/13/64 | Margaret Ann Whitt | 40 | Limestone | 12,000 | 8,967 |
| 11 | 8/21/59 | 3/13/64 | Margaret Ann Whitt | 40 | Limestone | 12,000 | 8,967 |
| 12 | 8/21/59 | 2/25/64 | Willard Whitt | 40 | Limestone | 12,000 | 8,967 |
| 13 | 8/21/59 | 3/20/64 | Willard Whitt | 40 | Madison | 12,000 | 8,967 |
| 14 | 3/1/32 | 3/20/64 | Willard Whitt | 40 | Madison | 12,000 | 8,967 |
| 15 | — | — | Audry Whitt | 60 | Limestone | 18,000 | 13,451 (1964) |
| 16 | 8/13/52 | 6/21/63 | Willard Whitt | 110 | Limestone | 33,000 | 23,264 |
| 17 | 8/13/52 | 11/16/63 | Thomas Whitt | 97 | Limestone | 29,100 | 20,514 |
| 18 | 8/13/52 | 12/8/70 | Alton Whitt | 191.5 | Lincoln & Giles, Tenn. | 67,350 | — |

The Tax Court determined that, in light of Alton's testimony, Elbert Whitt had effectively parted with all of his interest in Tract 1 before his death. However, the Tax Court also concluded that Alton did not pay consideration for the conveyance, and that it was therefore a gift which was not completed until the deed was recorded in 1964.

*Tracts Nos. 2, 3 and 4*

On August 21, 1959, Elbert and Nellie Whitt executed three warranty deeds to Audry Whitt, their son, conveying separate tracts of 63 acres, 70 acres and 50 acres respectively in Limestone County. Each deed recited the receipt of $10 and other valuable considerations. All three were recorded on February 25, 1964.

Audry Whitt died in 1970. No other evidence was introduced with respect to these three tracts, aside from the deeds themselves.

The Tax Court concluded that these tracts were includable in Elbert Whitt's estate under Section 2033.

*Tracts Nos. 5 and 15*

The Commissioner determined that at some unknown time Elbert Whitt had executed a deed to Audry Whitt conveying 40 acres in Madison County and 60 acres in Limestone County. No deeds or other evidence were introduced at the hearing concerning these tracts. The Tax Court concluded that the estate had utterly failed to overcome the presumption of correctness accorded to the Commissioner's deficiency determination as to either tract, and held that both were includable in the decedent's estate under Section 2033.

*Tract No. 6*

On August 21, 1959, Elbert and Nellie Whitt conveyed 160 acres in Limestone County by warranty deed to Loyd Whitt, their son. Although the deed recited receipt of $10 and other valuable considerations, Loyd did not pay cash.

Within six months of the execution of this deed, Loyd, at Elbert's request, built a house and moved onto the land. According to his testimony, he planted crops and worked the land continuously. He also paid property taxes and received the income derived from the 160 acres.[2] Although Loyd did not pay cash for the land, he claims that he performed services for his parents in their later years, such as driving his father into town and taking his mother to the hospital every week, and that he considered these services as being in payment for the property. The deed was recorded July 12, 1965.

The Tax Court concluded that Elbert Whitt had effectively conveyed this property to Loyd Whitt during his lifetime. Thus it was not includable in the estate. However, the court also concluded that Loyd's services to his parents were not a bargained-for consideration for the conveyance and that the transfer of the property was an *inter vivos* gift to Loyd. The court also found the evidence insufficient to permit a conclusion that the gift was complete and irrevocable prior to the recordation of the deed, and thus upheld the Commissioner's determination that the gift was taxable in 1963.

*Tract No. 7*

On August 21, 1959 Elbert and Nellie Whitt executed a warranty deed conveying 118.5 acres in Limestone County to their son, Mahlon Whitt, for $10 and other valuable considerations. This deed was recorded on September 11, 1964.

**2.** During an interview with two special agents of the IRS in 1975, Loyd Whitt stated that at the time Elbert conveyed this land to him, Elbert said that he was to retain all rents and payments on the land. As a result, Elbert received all ASCS and rent payments on Tract No. 6. This evidence was introduced, apparently for the purpose of impeaching Loyd's testimony concerning the disposition of the income from the land, only after Loyd had been excused.

Thus, he was not given an opportunity to explain the apparent inconsistency between his testimony and the remarks which he had made during the interview in 1975. However, counsel for the Estate withdrew his objection to the admission of this evidence and agreed that the unavailability of Loyd Whitt to respond should go to the weight rather than the admissibility of the interview.

Mahlon did not pay his parents any cash for this property. He testified, however, that he had received this property in satisfaction of a debt owed to him by his father concerning a land swap with a third party. This testimony was highly confusing. Mahlon never did indicate precisely in what way his father owed him any money. In any event, while Mahlon now indicates that his father owed him upwards of $4,000 in connection with some other land that Mahlon had owned before 1959, the deed to Tract No. 7 made no mention of this in the recitation of consideration. As to services which Mahlon performed for his father after 1959, he testified that he would have performed them even if he had not received the property.

Mahlon testified that he did take immediate possession of the property and received the income from it and reported this income on his tax returns. He also paid the assessed property taxes.

The Tax Court concluded that Elbert Whitt retained no interest in this property at the time of his death. However, the Tax Court discounted Mahlon's testimony that the consideration for the deed was the satisfaction of a prior debt, and concluded that the transfer of the property was simply an *inter vivos* gift. Here again, the Tax Court found the evidence insufficient to establish that the gift was complete and irrevocable at any time prior to the recordation of the deed on September 11, 1964.

*Tract No. 8*

On August 21, 1959, Elbert and Nellie Whitt executed a warranty deed conveying 60 acres in Limestone County to their daughter, Mary Whitt Richardson, reciting receipt of $10 and other valuable considerations. The deed was recorded on March 13, 1964.

No other evidence was offered with respect to this tract of land. Thus the Tax Court concluded that this property was includable in the estate under Section 2033.

*Tracts Nos. 9, 10 and 11*

On August 21, 1959, Elbert and Nellie Whitt executed three warranty deeds to their granddaughter, Margaret Ann Whitt, who was then seven years old. Each deed conveyed 40 acres in Limestone County and recited the receipt of $10 and other valuable considerations. The deeds were recorded on March 13, 1964.

Margaret's father, Thomas Whitt, died in 1957. Although Margaret did not testify at the hearing, her mother, Catherine Riethmaier, and stepfather, Jack Riethmaier, did testify. Catherine recalled that subsequent to the execution of the deed, Elbert told her that he had given some land to Margaret. No money was ever paid for this land. Catherine, who was Margaret's legal guardian, took possession of the property only after Elbert's death. Neither Margaret nor Catherine paid property taxes on these parcels. Nor did either of them receive any income from the land prior to Elbert's death, even though some of this land was cultivated and some of it was put to hogs. The hogs belonged to Elbert Whitt.

Based on Riethmaiers' testimony, the Tax Court concluded that Elbert Whitt retained an interest in each of these three tracts at the time of his death, and that all three were therefore includable in his estate under Section 2033.

*Tracts Nos. 12 and 13*

On August 21, 1959, Elbert and Nellie Whitt executed warranty deeds to their son, Willard Whitt, conveying 40 acres in Limestone County and 40 acres in Madison County. Each deed recited the receipt of $10 and other valuable considerations. These deeds were recorded on February 28, 1964 and March 20, 1964.

Willard did not pay any cash for these tracts. He took possession of the property, paid the property taxes and reported any income earned from the land on his income tax returns.

Although he did not pay cash, Willard insisted at the hearing that one of the reasons why his parents transferred these properties to their children in 1959 was to induce their children to live close by in order that they could provide services for

them in their old age. Nevertheless, the Tax Court concluded that the evidence was insufficient to conclude that these transfers were anything but *inter vivos* gifts. Moreover, there was not enough evidence to establish that these gifts were complete and irrevocable at any time prior to their recordation.

### Tract No. 14

The only deed introduced concerning this parcel of land was a warranty deed executed on March 1, 1932 by Bennie and Ellis Reyer to Willard Whitt for a stated consideration of $650.

The Commissioner determined that this property was owned by Elbert Whitt at some time during his life and that he retained an interest in it at the time of his death. While Willard Whitt testified as to the other tracts which he had received, he said nothing about Tract 14. Certainly, any testimony that Willard purchased this property from third parties for his own use and with his own money in 1932 and had continued in the exclusive ownership of the property until the time of his father's death would in all probability have been dispositive of his father's tax liability for this property. Since the Estate had ample opportunity to elicit such testimony from Willard but declined to do so, the Tax Court upheld the Commissioner's determination that Tract 14 was includable in the decedent's gross estate.

### Tract No. 16

On August 13, 1952, Elbert and Nellie Whitt executed a warranty deed conveying 110 acres in Limestone County to their son, Willard Whitt, reciting the consideration of $1500. Willard, however, never paid any cash for this land. After 1952 he provided numerous services for his parents, including planting their garden and driving them into town or to the hospital. He testified that he considered these services to be in payment for the land.

He also made additions to a house that was already on the land to enable tenant farmers to live there, and in 1963 built the house in which he is presently living. From the time that he received the land in 1952, Willard rented the land to tenant farmers. He received the income and paid the assessed property taxes.

The Tax Court was not convinced that the services which Willard performed for his parents were consideration for the property and concluded that the transfer of Tract 16 was an *inter vivos* gift to Willard. Again, it concluded that the evidence was insufficient to establish that this gift was complete and irrevocable at any time prior to the recordation of the deed on June 21, 1963. Therefore, the court sustained the Commissioner's second alternative determination that a gift tax was owing on the transfer of this property for the year 1963.

### Tract No. 17

On August 13, 1952, Elbert and Nellie Whitt conveyed 97 acres in Limestone County by warranty deed to their son, Thomas Whitt, reciting consideration of $1500.

Thomas Whitt died in 1957. This deed was recorded on November 16, 1963.

No other evidence was received concerning this property. There was thus no proof other than the deed itself that the consideration had been paid or that Thomas had taken possession of the property. Consequently, the Tax Court sustained the Commissioner's alternative determination that this was land in which Elbert Whitt continued to have an interest at the time of his death and that it was includable in the decedent's estate under Section 2033.

### Tract No. 18

On August 13, 1952, Elbert and Nellie Whitt executed a warranty deed conveying 191.5 acres in Lincoln and Giles Counties, Tennessee, to their son, Alton Whitt, for a stated consideration of $3,000.

Alton testified that he paid this consideration in three annual installments of $1,000. The Tax Court thus concluded that this property was effectively sold to Alton in 1952. Thus, it was not an *inter vivos* transfer subject to the gift tax, and it was not includable in Elbert's estate.

In summary, the Tax Court concluded that the transfers of Tracts 1, 6, 7, 12, 13 and 16 were *inter vivos* gifts to the respective grantees, completed at the time that the deeds were recorded. Therefore, the decedent owed gift taxes on those transfers for the years of recordation. The court also concluded that no tax was owing on the transfer of Tract 18. The court sustained the Commissioner's alternative determination that the decedent had retained an interest in each of the other tracts, and that they were thus all includable in his gross estate under Section 2033.

## ISSUES

The principal issues raised in this appeal are:

1. Whether the Tax Court failed to apply state law in determining that the decedent had retained an interest in 11 of these parcels until the time of his death, and, if so, whether this was error;

2. Whether the Tax Court erred in finding that six of these transfers were *inter vivos* gifts subject to the federal gift tax;

3. If not, whether the Tax Court erred in sustaining the Commissioner's determination that these gifts were taxable in the years in which the deeds were recorded.

## DISCUSSION

### A. *Standard of Review*

▮ In a proceeding before the Tax Court to review a deficiency determination, the taxpayer-petitioner has the burden of proving by a preponderance of the evidence that the Commissioner's determination is erroneous. *Carson v. Commissioner,* 560 F.2d 693, 695–96 (5th Cir.1977); *Byram v. Commissioner,* 555 F.2d 1234, 1236 (5th Cir.1977); *Rockwell v. Commissioner,* 512 F.2d 882, 885 (9th Cir.), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975); *see also Ireland v. United States,* 621 F.2d 731, 736 (5th Cir.1980) (same standard in suit for refund in district court). In making his case, the taxpayer must overcome a presumption of correctness which

attaches both to the deficiency determination itself and to the facts which support it. *Rockwell,* 512 F.2d at 885; *Toledano v. Commissioner,* 362 F.2d 243, 246 (5th Cir. 1966). When the Tax Court approves a deficiency determination, its findings of fact will not be set aside unless they are clearly erroneous. *Brannen v. Commissioner,* 722 F.2d 695, 701 (11th Cir.1984); *Cates v. Commissioner,* 716 F.2d 1387, 1390 (11th Cir.1983). However, where a case hinges on the legal characterization of a transaction, it becomes a question of law which is freely reviewable. *Fender v. United States,* 577 F.2d 934, 936 (5th Cir. 1978); *Casner v. Commissioner,* 450 F.2d 379, 387 (5th Cir.1971).

### B. *The Estate Tax*

#### (1) *Section 2033*

The Commissioner found that all 18 properties were includable in Elbert Whitt's gross estate under Section 2036 because Elbert had retained the possession or use, or the right to income from each of the 18 parcels until his death. Alternatively, he determined that any of the parcels which were not effectively transferred during Whitt's lifetime would be includable in the gross estate pursuant to Section 2033. The Tax Court, after analyzing the parameters of Section 2036, concluded that 11 of the parcels were includable in the gross estate under Section 2033.

▮ Section 2033 provides for the inclusion in the gross estate of "all property to the extent of the interest therein of the decedent at the time of his death." 26 U.S.C. § 2033. Under general principles of federal tax law, an interest that is taxable under this section is generally one that is created by state law. *See Morgan v. Commissioner,* 309 U.S. 78, 80, 60 S.Ct. 424, 425, 84 L.Ed. 585 (1940); *Estate of Bright v. United States,* 658 F.2d 999, 1001 (5th Cir.1981) (en banc). It is the equitable ownership, rather than legal title, which is taxed. *See Commissioner v. Chase Manhattan Bank,* 259 F.2d 231, 260 (5th Cir. 1958), *cert. denied,* 359 U.S. 913, 79 S.Ct.

589, 3 L.Ed.2d 575 (1959); Treas.Reg. § 20.2033–1.

■ We believe that the properties here are includable in the gross estate under Section 2033 only if, under Alabama law, the decedent was the equitable owner of an interest in them. Under the law of Alabama, the decedent would have the equitable interest in these properties if he had legal title and the equitable interest was not separated from the legal title, or if the property were impressed with the trust in his favor. There is simply no contention that the grantees were to hold the land in trust for their father, and it is doubtful that such a contention would be sustainable. *See Snow v. State,* 257 Ala. 614, 60 So.2d 346, 348 (1952). Thus, we believe that the decedent would have retained an "interest" in these properties under Section 2033 only if he never conveyed the legal title in the first place.[3]

The Commissioner appeared to understand this in his deficiency determination. There he emphasized that these properties were includable under Section 2033 to the extent that they had not been effectively transferred during Whitt's lifetime. Specifically, in his report of tax audit changes, the Commissioner determined that Tracts 5, 15 and 14 were includable under this provision because no deeds were found by which Elbert Whitt conveyed away his interest therein.

The Commissioner's findings as to these three tracts was entitled to a presumption of correctness. Since no evidence at all was introduced as to Tracts 5 and 15, the Commissioner's Section 2033 conclusions with respect to these properties was properly sustained by the Tax Court, and we affirm that part of the Tax Court's judgment.

A deed was introduced with respect to Tract 14, by which Bennie and Ellis Reyer

conveyed the property to Willard Whitt in 1932. No further effort was made, however, to establish that Elbert Whitt did not own an interest in this land at the time of his death, even though Willard was available to testify about the property. We conclude that the Tax Court was not clearly erroneous in its finding that the estate had not overcome the presumption that the Commissioner's determination was correct as to Tract 14. We therefore affirm that part of the Tax Court's judgment.

■ As to the other parcels, it is not so apparent to us that the Commissioner did in fact determine that these were includable under Section 2033. The Tax Court, however, concluded that they were. This is a mixed finding of law and fact which is freely reviewable.

As noted above, we believe that the remaining nine parcels were includable in the gross estate under Section 2033 only if they were never conveyed to the purported grantees during Elbert Whitt's lifetime. Since the deeds were properly executed and recorded five years before his death, however, these parcels would have been effectively conveyed at that time unless the deeds were never delivered to the grantees. *See Duncan v. Johnson,* 338 So.2d 1243, 1249 (Ala.1976); *Gulf Red Cedar Co. v. Cranshaw,* 169 Ala. 606, 53 So. 812, 814 (1910).

Under Alabama law, proof of recordation creates a rebuttable presumption of delivery. *Henslee v. Henslee,* 263 Ala. 287, 82 So.2d 222, 225 (1955). This is certainly the rule where a deed is challenged by one who is party of privy to it. *Blount v. Blount,* 158 Ala. 242, 48 So. 581, 583 (1909). The Alabama Supreme Court has stated that a deed gives rise to no presumptions when introduced against one who is neither party nor privy to it. *Baker v. Blackburn,* 5 Ala. 417, 418 (1843). However, that court has

---

**3.** This was the situation in *Estate of Mortimer v. Commissioner,* 117 T.C. 579 (1951), cited by the Commissioner. There the evidence established that, although the decedent had recorded deeds purporting to convey certain real estate to his daughters, he had never delivered the deeds to

the grantee. Thus, the Tax Court concluded that legal title never parted from the decedent during his lifetime and the property was includable under the predecessor of Section 2033. *Id.* at 583–84.

also indicated that where a grantor's creditor challenges a deed as having been recorded for the purpose of defrauding the creditor, the recordation does give rise to a prima facie presumption of delivery, placing the burden on the creditor to prove that it was merely a sham delivery to the recording office and that no title in fact passed. *Coulson v. Scott,* 167 Ala. 606, 52 So. 436, 437–38 (1910).

■ We need not consider whether these recorded deeds would be effective in and of themselves to create a presumption of delivery against the Commissioner in the event that he had already determined that they had not been properly executed or delivered. Here, the Commissioner made no affirmative finding that any of these properties other than the tracts already mentioned were includable under Section 2033 or that any of them had not been effectively conveyed. Thus, there is no presumption of correctness to overcome. Where the only evidence adduced at trial concerning a particular parcel was the recorded deed itself, we believe the Tax Court had no basis for concluding that that parcel had not been effectively conveyed to the stated grantee. Thus, we cannot affirm the Tax Court's conclusion that these parcels were includable in the gross estate pursuant to Section 2033.

### (2) *Section 2036*

■ Where, however, the factual findings permit us to affirm on an alternative ground, we may do so, at least in the absence of prejudice. *See Howard v. Gonzales,* 658 F.2d 352, 358 (5th Cir.1981); *Stegmaier v. Trammell,* 597 F.2d 1027, 1038 (5th Cir.1979). Since the Commissioner relied primarily on Section 2036, the Estate could hardly complain of prejudice if we were to affirm the Tax Court judgment on that basis.

■ The Commissioner determined that at the time of his death, Elbert Whitt retained the possession or use or the right to income from each of the 18 tracts and that his conveyances of those tracts had all been gratuitous. Thus, he concluded that

each of the 18 parcels was includable in the gross estate under Section 2036. The Tax Court found that this determination carried an implicit finding that Whitt retained such possession, use and right to income pursuant to express or implied agreements with the grantees. That finding is not clearly erroneous and will not be overturned.

Section 2036 provides in pertinent part:
A. *General Rule.*—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

> (1) the possession or enjoyment of, or the right to the income from, the property, or

> (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

26 U.S.C. § 2036(a).

The purpose of this section was to include in a decedent's estate gratuitous *inter vivos* transfers that are "essentially testamentary—*i.e.* transfers which leave the transfer or a significant interest in or control over the property during his lifetime." *United States v. Estate of Grace,* 395 U.S. 316, 320, 89 S.Ct. 1730, 1733, 23 L.Ed.2d 332 (1969). So long as the decedent retained substantial present economic benefit of the property during his lifetime, it is includable. *Commissioner v. Estate of Holmes,* 326 U.S. 480, 486, 66 S.Ct. 257, 260, 90 L.Ed. 228 (1946); *First National Bank v. United States,* 342 F.2d 415, 416–17 (5th Cir.1965).

"Possession" and "enjoyment" as those terms are used in Section 2036, mean the retention of "an income interest or, in the case of real property, the lifetime use of

the property." *United States v. Byrum,* 408 U.S. 125, 147, 92 S.Ct. 2382, 2396, 33 L.Ed.2d 238 (1972).

 Property which is gratuitously conveyed is includable in the grantor's estate if there is a contemporaneous or subsequent agreement that the grantor should remain in possession or that he should receive the income from the property. *Tubbs v. United States,* 472 F.2d 166, 166 (5th Cir.), *aff'g* 348 F.Supp. 1404 (N.D.Tex. 1972), *cert. denied,* 411 U.S. 983, 93 S.Ct. 2274, 36 L.Ed.2d 959 (1973); *Guynn v. United States,* 437 F.2d 1148, 1150 (4th Cir.1971); *Estate of McNichol v. Commissioner,* 265 F.2d 667, 671 (3d Cir.), *cert. denied,* 361 U.S. 829, 80 S.Ct. 78, 4 L.Ed.2d 71 (1959). It is not necessary that the right to possession and enjoyment have been retained in the deed. All that is necessary is that the surrounding circumstances, particularly the manner in which the parties have dealt with the property, manifest the existence of an implied agreement. *Estate of McCabe v. United States,* 475 F.2d 1142, 1146–47 (Ct.Cl.1973); *Tubbs,* 472 F.2d at 166; *Guynn,* 437 F.2d at 1150. Such an agreement need not be enforceable under state law in order to bring the property back into the decedent's estate. *McCabe,* 475 F.2d at 1146; *McNichol,* 265 F.2d at 670.[4]

 In *Tubbs* the decedent had, five years before her death, conveyed 480 acres from a 1,293 acre tract which she owned, to her daughter for a recited consideration of $10. The deed was subsequently recorded. From the time the deed was executed, the decedent continued to receive the entire income from the property, including oil and gas and crop rentals. She also paid property taxes on the land and claimed depreciation for the improvements. The decedent reported all of the income, while the daughter reported none of it. The Commissioner assessed a deficiency under Section 2036. The daughter, as executrix, sued for a refund. The district court concluded that the executrix utterly failed to carry her burden of proving that the decedent had not retained the right of possession and enjoyment and the right to the income from the property. 348 F.Supp. at 1406. Our court summarily affirmed, noting that the property was properly included in the estate because the "facts establish[ed] conclusively the existence of an implied agreement that the transferor was to have lifetime enjoyment of the property." 472 F.2d at 166.[5]

The tracts which the Tax Court erroneously included in the estate under Section 2033 fall into two groups: those about which testimony was received, specifically the properties conveyed to the decedent's granddaughter, Margaret Ann Whitt; and those about which no evidence was received other than the deeds themselves.

**4.** Contrary to the Estate's contention, we believe these decisions are entirely consistent with Alabama law. In *Snow v. State,* 257 Ala. 614, 60 So.2d 346 (1952), a man deeded realty to his sister and recorded the deeds, though he continued to exercise the right of control and retained its beneficial use. The sister never claimed ownership of the property and held title merely as an accommodation to her brother. The brother later arranged for the sale of the property to a third party, had his sister endorse the proceeds over to him, and claimed a loss on his income tax return. The sister did not report the sale. The State Department of Revenue assessed a deficiency against her, finding that she had realized a $25,000 gain on the sale. The Alabama Supreme Court, however, reversed on the ground that she had at no time enjoyed the beneficial ownership of the property and consequently was not liable for the taxes on the sale. *Id.,* 60 So.2d at 348–49.

In noting this, we caution that we are here concerned with a question of federal tax law which does not depend on its consistency with state law for its resolution.

**5.** This Court's decision in *Estate of Wyly v. Commissioner,* 610 F.2d 1282 (5th Cir.1980) has no application to this case. There we held that a husband who gave his community property interest in certain assets to his wife did not retain the right to the income generated by those assets by virtue of Texas community property law, since under that law his only interest in that income was the expectancy of an accounting in case of fraud. *Id.* at 1294. Here, on the other hand, the Commissioner and the Tax Court found that the economic benefit which the decedent enjoyed in these properties until his death was substantial, direct, and present.

With respect to the former group, we believe that the testimony of the Riethmaiers demonstrated conclusively that Elbert Whitt placed Tracts 9, 10 and 11 in his granddaughter's name with the understanding that he would continue to farm the land and raise pigs there and that he alone would derive the income from those properties until his death. Moreover, neither the stated grantee, Margaret, nor her guardian took possession of the land or received any of the income until after Elbert had died. Thus, we conclude that these three parcels were includable in the decedent's gross estate under Section 2036 and affirm the Tax Court on that ground.

As to the remaining parcels, the Estate had the burden of overcoming the presumption of correctness attaching to the Commissioner's finding that Elbert Whitt retained the possession and use of the property and the right to the income under implied agreements with the grantees. The introduction of the deeds alone did not meet this finding. Section 2036 presumes that legal title has been transferred, and this is all that the deeds proved. The burden was on the Estate to disprove the existence of an implied agreement whereby the decedent retained the use of the land and the right to the income therefrom despite the transfer of legal title to the children. Clearly the Estate has not done this. Thus, the Commissioner's determination that Tracts 2, 3, 4, 8 and 17 were includable under Section 2036 should have been sustained. We therefore affirm the Tax Court's inclusion of these properties in the decedent's gross estate.

### C. *The Gift Tax*

■ The Commissioner concluded that, if any of the parcels were effectively transferred during Elbert Whitt's lifetime, such transfers were for less than adequate and full consideration and were thus subject to the gift tax. He further determined that, in the absence of evidence to the contrary, the gifts were to be treated as completed in the years in which the deeds were recorded, 1963 and 1964, rather than the years when they may have been executed and delivered. The Tax Court held that, while there was sufficient evidence to conclude that Tracts 1, 6, 7, 12, 13 and 16 were effectively transferred during Whitt's lifetime, these conveyances were gifts which, as the Commissioner determined, were not completed until 1963 or 1964. This is a finding of fact which will not be overturned unless clearly erroneous.

A transfer of property is deemed a gift if it is "for less than an adequate and full consideration in money or monies' worth." 26 U.S.C. § 2512(b). The Commissioner determined that, at the time these deeds were recorded, each of these properties was worth at least $8,967.10. The deeds, however, recited receipt of merely nominal consideration, specifically $10, and the persons who received these properties uniformly testified that not even that was paid. While they did testify about various services which were afterwards performed for their parents, the Tax Court found that these services were not in fact bargained-for considerations supporting the transfers. This finding was not clearly erroneous and will not be disturbed.

Prior to 1970, the gift tax was to be paid by the donor in the calendar year in which the gift was made. *See* 26 U.S.C. § 2501(a) (amended 1970). The tax is imposed only on completed gifts. A gift is deemed complete if "the donor has so parted with dominion and control as to leave in him no power to change its disposition, whether for his own benefit or for the benefit of another." Treas.Reg. § 25.2511–2(b). The elements of a completed gift have been identified as

(1) A donor competent to make the gift; (2) a donee capable of taking the gift; (3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter of the gift, *in praesenti;* (4) the irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or

control over him; (5) a delivery by the donor to the donee of the subject matter of the gift or of the most effectual means of commanding the dominion of it; (6) acceptance of the gift by the donee....

*Guest v. Commissioner,* 77 T.C. 9, 16 (1981); *Weil v. Commissioner,* 31 B.T.A. 899, 906 (1934), *aff'd,* 82 F.2d 561, 562–63 (5th Cir.), *cert. denied,* 299 U.S. 552, 57 S.Ct. 14, 81 L.Ed. 406 (1936).

It is true that under Alabama law, a conveyance of real property is ordinarily irrevocable as between the parties to the deed even though no consideration is paid. *Russell v. Russell,* 361 So.2d 1053, 1054 (Ala.1978); *Taylor v. Godsey,* 357 So.2d 979, 980 (Ala.1978).

 However, Alabama law also requires that, in order for an *inter vivos* gift to be complete, the donor must clearly intend to relinquish title and all present and future dominion over the property; the property must be delivered to the donee; and the donee must accept the gift. *First Alabama Bank v. Adams,* 382 So.2d 1104, 1110–11 (1980); *White v. Sims,* 326 So.2d 733, 734 (Ala.1976); *Garrison v. Grayson,* 284 Ala. 247, 224 So.2d 606, 608 (1969). Thus, under Alabama law, as well as under federal tax law, these gratuitous conveyances of real estate to the decedent's children were not completed gifts until the decedent intended to part irrevocably with his dominion over the property.

 The Commissioner determined that these transfers did not become completed gifts until the deeds were recorded. Implicit in this determination was a finding that, absent evidence to the contrary, Elbert Whitt did not possess the necessary intent until the time of recordation, because only recordation would protect these deeds against a subsequent disposition of the property by Elbert Whitt.

The Alabama Recording Act provides in pertinent part:

(a) All conveyances of real property ... are inoperative and void as to purchasers for a valuable consideration, mortgagees for a valuable consideration, mortgagees and judgment creditors without notice, unless the same have been recorded before the accrual of the right of such purchasers, mortgagees or judgment creditors.

Ala.Code § 35–4–90 (1975).

Thus, until these deeds were recorded, it remained within Elbert Whitt's power to defeat them by executing deeds to the same properties to bona fide purchasers for value without notice. Likewise he retained the power to execute mortgages on these parcels so long as his mortgagees were without notice of the conveyances to the children. Only when the deeds were recorded did he relinquish the control which he had over the disposition of these properties under the local recording statute.

We do not say that in every instance a gift of real property is incomplete for federal tax purposes until the deed of conveyance is recorded. All we are saying is that in this case there were sufficient facts from which the Tax Court could conclude that these gifts were not intended to be completed until the recordation of the respective deeds. Most of these deeds were executed on the same day, reciting merely nominal consideration. None were recorded for several years thereafter. All of them were then recorded within a period of 15 months.

One other fact lends considerable weight to the Tax Court's finding. At no time prior to the recordation of these deeds did the decedent, who was liable for the gift tax, report any of these transfers as taxable gifts, though they were clearly made for less than adequate and full consideration. The Estate can hardly be heard to complain now that Elbert Whitt really intended that these gifts should take effect in an earlier year, though he never declared them as gifts prior to their recordation.

The Tax Court's finding was thus not clearly erroneous. We therefore affirm that part of the judgment which holds that the estate is liable for gift taxes on the transfers of Tracts 1, 6, 7, 12, 13 and 16 in the years of recordation, 1963 or 1964.

AFFIRMED.