[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10636
Non-Argument Calendar
_____

Agency No. 29806-07


WILLIAM HARNETT,
 NANCY HARNETT,

                              Petitioners - Appellants,

versus

COMMISSIONER OF IRS,

                              Respondent - Appellee.

_____

Petition for Review of a Decision of the
U.S.Tax Court
_____

(November 14, 2012)

Before CARNES, BARKETT and MARTIN, Circuit Judges.

PER CURIAM:

William and Nancy Harnett, husband and wife, appeal a Tax Court judgment that found them liable for an income tax deficiency of $234,610 for the 2003 tax year, $207,595 for the 2004 tax year, and $197,331 for the 2005 tax year. The deficiency resulted from the Internal Revenue Commissioner's recharacterization of losses related to real estate rental activities from nonpassive activity losses to passive activity losses. Section 469 of the Internal Revenue Code limits the ability of taxpayers to deduct passive activity losses. I.R.C. § 469(a).

While rental activity is typically considered a passive activity, id. § 469(c)(2), it is not passive if the taxpayer is involved in "real property business" as defined by I.R.C. § 469(c)(7)(B). Id. § 469(c)(7)(A). A taxpayer is deemed to be involved in "real property business," if he "perform[ed] more than 750 hours of services during the taxable year in real property trades or businesses in which [he] materially participates." I.R.C. § 469(c)(7)(B)(ii). Here, the Tax Court determined that the Harnetts "failed to establish that for any year at issue petitioner meets the 750 hour requirement." The court therefore "sustain[ed] [the Commissioner's] determination that the losses at issue are attributable to per se passive activities and are subject to the section 469 limitations."

The Harnetts make several challenges to the Tax Court's determination.

2

First, they argue that the Tax Court erred in finding that Mr. Harnett was not in a real property trade or business as defined by I.R.C. § 469(c)(7)(B).  Second, they argue that the Tax Court erred by not shifting the burden of proof to the Commissioner after the Harnetts made an initial showing that Mr. Harnett "was involved in a real estate trade or business."  Third, they argue that the Tax Court committed reversible error by not admitting into evidence a "Narrative Summary" prepared by Mr. Harnett.  We address each in turn.

## I.

To begin, the Tax Court held that the Harnetts failed to prove that their rental real estate losses were nonpassive activity losses, and therefore deductible, because they did not prove Mr. Harnett "perform[ed] more than 750 hours of services during [each] taxable year in real property trades or businesses in which [he] materially participat[ed]."  I.R.C. § 469(c)(7)(B)(ii).  The Harnetts challenge this conclusion.

In the Tax Court, the taxpayer "has the burden of proving by a preponderance of the evidence that the Commissioner's determination is erroneous."  Estate of Whitt v. Comm'r, 751 F.2d 1548, 1556 (11th Cir. 1985).  "When the Tax Court approves a deficiency determination, its findings of fact will not be set aside unless they are clearly erroneous."  Id.  We review the Tax Court's

legal determinations de novo.  Bone v. Comm'r, 324 F.3d 1289, 1293 (11th Cir. 2003).

The Tax Court properly determined that the Harnetts had to prove that Mr. Harnett "perform[ed] more than 750 hours of service" during each of the audit years "in real property trades or businesses" in which Mr. Harnett "materially participat[ed]" in order to claim the rental activity losses as nonpassive activity losses.  I.R.C. §§ 469(c)(2), (7).  This is an explicit requirement in the Internal Revenue Code and applies to all types of taxpayers, whether they are suspected of investing in a tax shelter or not.  See generally I.R.C. § 469.  A taxpayer must satisfy this requirement in addition to demonstrating that "more than one-half of the personal services [he] performed in trades or businesses" during the audit years was "performed in real property trades or businesses in which the taxpayer materially participate[d]."  Id. § 469(c)(7)(B)(i).

As part of their challenge to the Tax Court's analysis of the 750-hour requirement, the Harnetts argue that the Tax Court misunderstood them when it determined that they had "waived any argument that [Mr. Harnett] materially participated" with respect to the properties at Kim Brett Drive, Laurel Lane, Ocean Drive, and adjacent to Batts Neck Plantation and therefore did not count "any hours that [Mr. Harnett] spent with respect to th[ese] propert[ies] . . . toward the

4

750-hour requirement." If this was an error, it was harmless. The hours claimed each year for the properties at Kim Brett Drive, Laurel Lane, and Batts Neck were minimal.[1] Also, Mr. Harnett claimed that he worked substantially more hours on the condominiums at Ocean Drive, however the Tax Court explained that even if those hours did count towards the 750-hour requirement, the court was not convinced that Mr. Harnett had actually spent much time on those properties. Specifically, the court stated that the documents submitted "contain[ed] no evidence that improvements were made to these units during the years at issue" and called into question Mr. Harnett's claim that he "spent very much time personally tending to the marketing and sale of these properties."

The Harnetts also argue that the Tax Court ignored some of the evidence they presented. But, much of the evidence the Harnetts claim that the Tax Court ignored was more relevant to the "more than one-half of . . . personal services" requirement than the 750-hour requirement. For example, the Harnetts argue that the Tax Court ignored Mr. Huffman's testimony that "Mr. Harnett spent only a day or two per month [working] at the bank, and the rest of the time on his personal

---

[1] Mr. Harnett claimed 38.5 hours, 5.5 hours, and 1 hour of work at Kim Brett Drive for years 2003, 2004, and 2005, respectively. He claimed 11 hours, 4.5 hours, and 1 hour of work at Laurel Lane for years 2003, 2004, and 2005, respectively. He claimed 10.5 hours, 7 hours, and 14 hours of work on the properties abutting Batts Neck Plantation for years 2003, 2004, and 2005, respectively.

real estate deals." This testimony would be very helpful for determining whether Mr. Harnett worked more at Washington Savings Bank or on the properties he owned. It is not particularly useful, however, for determining how many hours Mr. Harnett spent working on his properties.

Other evidence that the Harnetts claim the Tax Court ignored demonstrated that Mr. Harnett spent some time working on these properties, but would not have necessarily proved that Mr. Harnett satisfied the 750-hour requirement. For example, one of the lawyers the Harnetts claim the Tax Court ignored testified that Mr. Harnett spent, at most, 60-80 hours in one year working on legal issues related to one of the properties. As before, this testimony supports Mr. Harnett's assertion that he spent hours working with lawyers dealing with one of his properties, but it does not prove that Mr. Harnett reached the 750-hour threshold.

Ultimately, the Tax Court's determination rests on its decision that the primary evidence the Harnetts relied on to prove that Mr. Harnett met the 750-hour requirement, Mr. Harnetts testimony, was not convincing. The Tax Court had significant credibility concerns about the number of hours Mr. Harnett claimed to have spent on each property each year. "It was for the Tax Court to determine the credibility that was to be afforded the testimony of [Mr. Harnett] and the verity that was to be afforded his records." Stein v. Comm'r, 322 F.2d 78,

6

82 (5th Cir. 1963).[2]  Such "[c]redibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses."  United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002).

"If testimony . . . stretch[es] the credulity of the Court it can decline to believe it if the taxpayer's credibility is already before the Court."  Anderson v. Comm'r, 250 F.2d 242, 247–48 (11th Cir. 1957).  A taxpayer's credibility can be before the court if, for example, parts of his testimony are not supported by the documentary evidence.  See id.  Portions of Mr. Harnett's testimony reconstructing the hours he spent participating in his real estate activities were contradicted or unsupported by the evidence.  For example, the Tax Court discounted the hours claimed for Batts Neck Plantation because Mr. Harnett attributed those hours to "personally . . . renovating the barn" and doing other work on the property, while contractors who worked on the property testified that they "never saw [Mr. Harnett] working on the property."  Also, the Tax Court pointed out that Mr. Harnett "testified in 2005 he tore down a stone wall" at one of his properties, while an invoice showed that "the wall was not repaired during the years at issue"

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

and, in any event, it was not Mr. Harnett who actually tore down the wall.

The Tax Court did not clearly err in determining that the Harnetts did not prove, by a preponderance of the evidence, that Mr. Harnett "perform[ed] more than 750 hours of services" during 2003, 2004, and 2005 "in real property trades or businesses in which the taxpayer materially participate[d]." See I.R.C. § 469(c)(7)(B)(ii).

## II.

The Harnetts also argue that the Tax Court erred by not shifting the burden of proof to the Commissioner. Section 7491 of the Internal Revenue Code does allow the burden of proof on factual matters to shift from the taxpayer to the Commissioner. I.R.C. § 7491(a)(1). However, the burden may shift only if the "taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer;" the taxpayer has complied with the substantiation and record maintenance requirements; and the taxpayer "has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews." Id. § 7491(a)(2). The Tax Court's factual determinations are reviewed for clear error. Piggly Wiggly Southern, Inc. v. Comm'r, 803 F.2d 1572, 1576 (11th Cir. 1986).

The Tax Court did not shift the burden to the Commissioner because it

8

determined that the Harnetts "failed to present credible evidence sufficient to establish that [Mr. Harnett] meets the 750-hour requirement." Specifically, the Tax Court found that the evidence presented was not credible because it was "vague, exaggerated, and unsupported or contradicted."

The Tax Court did not clearly err in making this determination. Evidence is not credible under I.R.C. § 7491(a)(2) if "the court is not convinced that it is worthy of belief." Higbee v. Comm'r, 116 T.C. 438, 442 (Tax. Ct. 2001) (quotation marks omitted). In addition, "the court is not bound to accept testimony at face value even when it is incontroverted if it is improbable, unreasonable, or questionable." Comm'r v. Smith, 285 F.2d 91, 96 (5th Cir. 1950). The Tax Court was not convinced that Mr. Harnett's testimony regarding the hours he worked on each property each audit year was worthy of belief, and viewed the testimony as questionable. Thus, it was permissible for the Tax Court to find that the Harnetts had not presented credible evidence regarding the 750-hour requirement and as a result, decline to shift the burden of proof to the Commissioner.

## III.

The Harnetts next argue that the Tax Court erred by not admitting into evidence two separate documents: a narrative summary, marked as Exhibit 29-P,

and a grid detailing the number of hours Mr. Harnett spent on each property each month, marked as Exhibit 22-P.  We review the Tax Court's evidentiary rulings for abuse of discretion.  See Pollard v. Comm'n, 786 F.2d 1063, 1067 (11th Cir. 1986); cf. United States v. Brown, 415 F.3d 1257, 1264–65 (11th Cir. 2005).  Even if an evidentiary ruling was an abuse of discretion, it will not result in reversal if the error was harmless.  See Pollard, 786 F.2d at 1067; cf. United States v. Bradley, 644 F.3d 1213, 1270 (11th Cir. 2011).  "An [evidentiary] error is harmless unless there is a reasonable likelihood that [it] affected the defendant's substantial rights."  Bradley, 644 F.3d at 1270 (alteration in original) (quotation marks omitted).

Turning first to the narrative summary, the Harnetts' counsel specifically stated that they were not seeking to have that document put into evidence.  We cannot say that the Tax Court abused its discretion by refusing to admit a document into evidence that was never offered.

The Harnetts attempted to enter the grid into evidence, but the Tax Court did not admit it because it did not "provide[] any additional probative value."  The only information a reader can learn from the grid, Exhibit 22-P, is the list of properties; an estimated number of hours Mr. Harnett worked on each property each day during the audit years; and estimated totals.  Mr. Harnett came up with

10

the estimates he put in the grid by looking through his records and "reconstruct[ing] as best [he] could [his] participation in each property." He did this reconstruction in 2008 to help the IRS "understand [his] enormous project."

Mr. Harnett was permitted to testify about how he came up with the number of hours listed in the grid and he was allowed to use the grid to refresh his recollection and answer how many "hours that [he] . . . had reconstructed for the work that [he] did on [a] particular property." For each property, Mr. Harnett testified to the total estimated hours he spent working on the property for each of the audit years.

Being that the numbers on the grid only represented Mr. Harnett's reconstruction of the hours he worked and that he was allowed to rely on the grid to testify about the information it contained, the Tax Court did not abuse its discretion by refusing to admit the grid into evidence. See United States v. Wood, 943 F.2d 1048, 1053 (9th Cir. 1991) (explaining that "charts or summaries of testimony or documents already admitted into evidence are merely pedagogical devices" that "should be used only as a testimonial aid, and should not be admitted into evidence").

## IV.

For these reasons we affirm the judgments of the Tax Court.

11

**AFFIRMED**